UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. MARY ROOF )
14 Tracys Lane )
Tracys Landing, MD 20779, )
 )
    Plaintiff, )
 )
v. ) Case No. _____
 )
HOWARD UNIVERSITY, )
 )
    Serve: )
    Norma Leftwich, Esq. )
    Office of the General Counsel )
    Howard University )
    2400 6th Street NW )
    Washington, DC 20059, )
 )
and )
 )
DR. IAN I. SMART, )
 )
    Serve: )
    Dr. Ian I. Smart )
    10101 Green Forest Drive )
    Hyattsville, MD 20783-1318, )
 )
    Defendants. )

## CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY

### INTRODUCTION

1.     Plaintiff, Dr. Mary Roof ("Roof") files this Complaint of racial discrimination against Defendant Howard University ("Howard") in violation of Title VII of the Civil Rights Act of 1964, § 42 U.S.C. 2000e *et seq.* (2007) ("Title VII") and

1

against Defendants Howard and Dr. Ian I. Smart ("Smart") in violation of the District of Columbia Human Rights Act, § 2-1401.01, *et seq.* (2007) ("DCHRA").

2. Roof is Caucasian and a junior faculty member at Howard, an "Historically Black College and University." Smart is a native of Trinidad and a senior faculty member at Howard.

3. When Smart sent a series of unprovoked and offensive emails that allude to Roof as a privileged Caucasian plantation mistress, Roof reported the harassment and requested Howard's immediate intervention.

4. Instead of taking immediate and corrective action, however, Howard was silent.

5. When Roof filed a discrimination claim with the United States Equal Employment Opportunity Commission ("EEOC"), Howard remained silent.

6. Nearly a year after Smart began harassing Roof, and despite the EEOC's issuance to Roof of a Notice of Right to Sue, Howard's only action was to send Roof a letter advising her to read Howard's sexual and gender discrimination policies.

7. Although Smart continues to harass Roof, Howard has not issued any corrective action or reprimand of Smart.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it contains a federal question arising under the Constitution and laws of the United States. Supplemental jurisdiction over the Plaintiff's pendent state-law claim is

conferred by 28 U.S.C. § 1367.

9. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Defendant Howard is located in this judicial district.

## PARTIES

10. Plaintiff Roof is a professor at Defendant Howard and a resident of the State of Maryland.

11. Defendant Howard is located in and conducts business in the District of Columbia.

12. Defendant Smart is a professor at Howard and a resident of the State of Maryland.

## FACTUAL ALLEGATIONS

### Background

13. Howard was founded in 1867 following the Civil War and is designated a "Historically Black College and University" ("HBCU").

14. Howard's mission is to "provide educational opportunities for African-American men and women."

15. Howard's faculty and student body are majority African American.

16. Roof is Caucasian.

17. Roof was hired by Howard in 1989 as a Lecturer in its Department of Romance Languages. In Roof's approximately 18 years working for Howard, she has

been given increasingly more responsibility, as a chair of the department appointments, promotion and tenure committee, member of the department director search committee, director of independent studies, director of masters theses, and member of a doctoral dissertation committee.

18. Roof is currently a tenured Graduate Associate Professor of Spanish and a Junior Faculty Member of Howard's Department of Modern Languages and Literatures.

19. Smart is a native of Trinidad and one of the over 60 percent of Howard faculty members who are of African descent.

20. Smart is currently a tenured Professor of Spanish and a Senior Faculty Member of Howard's Department of Modern Languages and Literatures.

21. Smart is the author of *Dude, Where's My HBCU?* a book detailing Smart's perception that Howard's identity as a "Historically Black College and University" is tarnished because it operates like a Civil War-era plantation for its majority African-American student body.

22. Smart is also the author of a personal blog in which he writes about Howard's purported decline into a Civil War-era plantation.

**Smart's Harassment of Roof**

23. Between on or about January 9 and January 12, 2006, Smart sent a series of unprovoked e-mails about Roof to approximately 46 Howard faculty and staff, including the Department of Modern Languages and Literature chairman, tenured

4

faculty, tenure-track faculty, instructors, lecturers, student teaching assistants, and administrative staff.

24.     On or about January 9, 2006, Smart sent an e-mail claiming that Roof doubted "the viability and even the validity of any graduate program in modern languages and literature at a 'Negro' college, even at the 'Mecca.'"

25.     On or about January 10, 2006, Smart sent another e-mail, stating "I dreamt that [the] department had been incorporated into the US military [and] that [. . .] Roof had been reinstated into the officer corp [. . .] as brigadier general [. . .] I screamed in horror at what had become of us. And then I awoke. And it was all just a horrible nightmare."

26.     On or about January 11, 2006, Smart sent a third e-mail asserting that Roof had privileged status at the University because she is Caucasian. Smart stated "Who is this Mary [. . .] Roof? Does she enjoy some special privileged status here at the principal Uncle Tom's Campus?" Smart referred to Roof as "an apparently Caucasian woman in her sixties" who "is at best a mediocre scholar" and who "customarily sets the academic bar for both her undergraduate and graduate students at mediocrity."

27.     On or about January 11, 2006, and after Roof e-mailed Smart asking him to retract his comments, Smart sent a fourth e-mail alluding to Roof as a plantation mistress. Smart stated "Ah done wrong. My bad. Ah done gone and get Miss Mary mad. Ah sure is a real stupid nigger. Ah hope you all intercede with Miss Mary for me. Ah done gone and mess up again. Miss Mary is de best ting dat could of ever happen to we in dis Department. She does talk Spanish like a native; and she best

5

friend does speak French. So, ah trow mehself' at Miss Mary feet. Ah beg she to give me a break dis time. Ah is just one dumb niggerman from de Islands. All you talk to she for me (sic)."

28. On or about January 12, 2006, Smart sent a fifth e-mail claiming that like the founder of Howard, Roof is a white supremacist. Smart stated that Howard's founder Major General Oliver Otis Howard "did not intend that his university would do more than train Negroes to fit into white society as second-class citizens. The Howard University Graduate School of Arts and Sciences demonstrated that it espouses and enforces this approach to the (mis-)education of Negroes through its handling of the Ph.D. program in Romance Languages and its general handling of the graduate program in the Department of Modern Languages and Literatures [. . .] Dr. [. . .] Roof has repeatedly renewed her membership in the Graduate School of Arts and Sciences [. . .] Dr. [. . .] Roof has, then, repeatedly reaffirmed her adherence to the philosophy of the Graduate School of Arts and Sciences. I will let you draw the conclusion for yourself."

29. On or about April 2, 2007, Smart sent a sixth e-mail to approximately 20 Howard faculty and staff, including Department of Modern Languages and Literature Chairman Davis. Stating "Life imitates art," Smart attacked and compared a three-member committee on which Roof sits with characters in his book *Dude, Where's My HBCU?*

30. As a result of these unprovoked attacks, Roof has experienced stress, anxiety, pain, mental duress, and distraction that interfere with her research, writing, and ability to participate in functions and programs at Howard.

6

**Roof's Reports of Smart's Harassment and Howard University's Inaction**

31. Because the Chairman of the Department of Modern Languages and Literatures, Dr. James J. Davis ("Davis"), and other Howard University officials were direct recipients of Smart's e-mails, they were aware of the harassment at the time of its occurrence.

32. On or about January 20, 2006, Roof sent Davis a letter detailing Smart's harassment and requesting that Howard intervene and take corrective action.

33. On or about January 25, 2006, Davis e-mailed Roof, acknowledging receipt of her letter, but offering no instructions or inquiry.

34. On or about January 26, 2006, Davis sent a letter to Dr. James Donaldson ("Donaldson"), Dean of the College of Arts and Sciences, attaching Roof's January 20, 2006 letter. In his letter, Davis repeated Roof's report that Smart harassed her and that she was "appealing to the University, through [him], to investigate and take appropriate actions against Dr. Smart." Davis asked Donaldson for advice on how to handle the report and suggested that Donaldson meet with him to discuss the harassment. Davis also indicated that he discussed Roof's case with College of Arts and Sciences Associate Dean, Barbara Griffin, to whom he also forwarded Roof's letter and supporting documentation.

35. On or about March 11, 2006, and after waiting approximately 60 days without any action by Chairman Davis, Dean Donaldson, or Associate Dean Griffin, or any other official at Howard, Roof reported the discrimination to the EEOC.

7

36. On or about April 27, 2006, after the EEOC interviewed Roof, Roof filed a discrimination complaint with the EEOC.

37. On or about May 17, 2006, Davis sent an e-mail to Roof acknowledging receipt of the EEOC complaint but once again offering no instructions or inquiry.

38. On or about December 7, 2006, the EEOC issued a Letter of Determination, finding reasonable cause that Howard violated Title VII because it knowingly failed to respond to the harassment that created a hostile work environment for Roof.

39. In the approximately seven months between Davis' acknowledged receipt of the EEOC complaint and the EEOC's issuance of a Determination Letter on or about December 7, 2006, Howard did not respond to Roof's report of discrimination or issue any corrective action or reprimand of Smart.

40. On or about January 3, 2007, the EEOC issued Roof a Notice of the Right to Sue which Roof received on or about January 9, 2007.

41. On or about January 22, 2007, and one year from the date of Roof's report of harassment to Howard officials, Howard's Office of the General Counsel sent Roof a letter referring her to three university policies she "should read and become familiar."

42. On or about April 2, 2007, and approximately one year and three months from the date of Smart's first harassing e-mail, Roof reported Smart's continued harassment to Howard officials.

43. As of the date of this filing, Howard has not issued any corrective action or reprimand of Smart.

**FIRST CAUSE OF ACTION**
Title VII of the Civil Rights Act of 1964, § 42 U.S.C. 2000e *et seq.* (2007)
(as to Defendant Howard University)

44.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

45.    Because it is engaged in an industry affecting commerce and has fifteen or more employees, at all relevant times herein Howard was and is an "employer," pursuant to Title VII of the Civil Rights Act, § 42 U.S.C. 2000e.

46.    Smart subjected Roof to unwelcome harassment, as defined in *Howard University v. Best*, 484 A.2d 958, 978 (D.C. 1984).

47.    Smart's unwelcome harassment of Roof was based on her protected status, as required by Title VII of the Civil Rights Act, § 42 U.S.C. 2000e-2(a)(1).

48.    Smart's unwelcome harassment of Roof unreasonably interfered with her work performance, as articulated in *Clipper v. Billington*, 414 F. Supp. 2d 16, 24 (D.D.C. 2006).

49.    Smart's unwelcome harassment of Roof was sufficiently severe to create a hostile work environment, as defined by *Park v. Howard University*, 71 F.3d 904, 906 (D.C. Cir. 1995), *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), *Kriesch v. Johanns*, 468 F. Supp. 2d 183, 187 (D.D.C. 2007).

50.    Roof informed Howard officials of Smart's harassment.

51.    Because Howard knew or should have known of Smart's harassment of Roof and failed to implement prompt and corrective action, Howard engaged in racial discrimination against Roof by enabling a hostile work environment. *See Clipper v.*

9

*Billington*, 414 F. Supp. 2d 16, 24 (D.D.C. 2006), *Curry v. District of Columbia*, 195 F.3d 654, 660 (D.C. Cir. 1999).

52. Roof exhausted her administrative remedies with the EEOC, which issued Roof a Notice of Right to Sue on January 3, 2007.

## SECOND CAUSE OF ACTION
District of Columbia Human Rights Act, § 2-1401.01, *et seq.* (2007)
(as to Defendant Howard University and Defendant Smart)

53. The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

54. At all relevant times herein, Roof was and is a member of a protected class as defined by the District of Columbia Human Rights Act, D.C. Code Ann. § 2-1401.01.

55. At all relevant times herein, Howard was and is an "employer," pursuant to the DCHRA § 2-1401.02(10).

56. Smart aided and abetted, and/or attempted to engage in discriminatory acts forbidden by the DCHRA § 2-1402.62 and explained in *Mitchell v. National R.R. Passenger Corp.*, 407 F. Supp. 2d 213, 241 (D.D.C. 2005).

57. Smart subjected Roof to unwelcome harassment, as defined by the DCHRA.

58. Smart's unwelcome harassment of Roof was based on her protected status.

59. Smart's unwelcome harassment of Roof was sufficiently severe to affect a term, condition, and or/privilege of Roof's employment.

60. Because Roof exhausted her administrative remedies with the EEOC, which issued a Notice of Right to Sue to Roof on January 3, 2007 and that Roof received on January 8, 2007, Roof also exhausted her administrative remedies with the District of Columbia Office of Human Rights and has a right to bring this suit. *See Fowler v. District of Columbia*, 122 F. Supp. 2d 37, 42 (D.D.C. 2000).

## PRAYER FOR RELIEF

WHEREFORE, and based on the foregoing discrimination, Roof respectfully requests that she be awarded the following relief:

61. Economic damages for actual monetary losses sustained as direct result of the discrimination and compensation for any special damages sustained as a result of the discrimination;

62. Compensatory (non-economic) damages, including damages for mental and emotional distress;

63. Punitive damages to punish Defendant Howard and Defendant Smart for knowing discrimination and to deter them from similar conduct toward other employees;

64. Injunctive, declaratory or equitable relief, as may be appropriate, to prevent further harm to others and the public caused by Defendant Howard; and

65. Reasonable litigation costs, expert fees and reasonable attorneys' fees, together with all other relief available from law and equity.

Respectfully submitted,

_____
R. Scott Oswald, DC Bar No. 458859
Adam Augustine Carter, DC Bar No. 437381
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

_____
R. Scott Oswald

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Dr. Mary Roof

**DEFENDANTS**

Howard University, Dr. Ian I. Smart

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

R. Scott Oswald, Esq.
Adam Augustine Carter, Esq.
The Employment Law Group, P.C.
888 17th Street, NW Suite 900
Washington, DC 20006
(202) 261-2806

ATTORNEYS (IF KNOWN)

Norma Leftwich, Esq.
Office of the General Counsel
Howard University
2400 6th Street, NW
Washington, DC 20059

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ⦿ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Racial discrimination, Title VII of Civil Rights Act of 1964, § 42 U.S.C. 2000e et seq. (2007) and D.C. Human Rights Act § 2-1401.01, et seq. (2007)

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 04/04/2007   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.