UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. MARY ROOF,                      )
                                    )
          Plaintiff,                )
                                    )
     v.                             )
                                    )
HOWARD UNIVERSITY                   )          Civil Action No. 1:07-CV-00639 (ESH)
                                    )
     and                            )
                                    )
DR. IAN I. SMART,                   )
                                    )
          Defendants.               )
                                    )

---

## DEFENDANT HOWARD UNIVERSITY'S MOTION TO DISMISS AND FOR A STAY OF DISCOVERY

Pursuant to Fed. R. Civ. P. 12(b)(6), defendant Howard University ("University") moves to dismiss plaintiff Mary Roof's Complaint for failure to state a claim upon which relief can be granted.

The Complaint alleges that Plaintiff was subject to a racially-discriminatory hostile environment at the University, in violation of Title VII and the D.C. Human Rights Act. The hostile environment allegedly arose through five e-mails that another faculty member (Dr. Smart) sent over a four-day period in January 2006. For the reasons set forth in the accompanying memorandum, the allegations are legally insufficient to state a hostile-environment claim against the University.

Pursuant to Local Civil Rule 26.2(a) and Fed. R. Civ. P. 26(c), the University also seeks a stay of discovery pending the later of the Fed. R. Civ. P. 26(f) conference and a ruling on the University's motion to dismiss. Such a stay will serve to avoid imposing on the University the potentially

unnecessary and substantial expense of responding to numerous document requests, interrogatories, requests for admissions, and deposition notice already propounded by Plaintiff.

A proposed Order is provided.

Pursuant to Local Civil Rule 7(m), counsel for the University has consulted with Plaintiff's counsel respecting this motion, and Plaintiff's counsel will not consent to the motion.

Respectfully Submitted,

Daniel I. Prywes (D.C. Bar No. 342394)
Stacey Terry Ormsby (D.C. Bar No. 490995)
BRYAN CAVE LLP
700 Thirteenth Street, N.W., Suite 700
Washington, D.C. 20005
Phone: (202) 508-6000
Fax:    (202) 220-7394

Dated:  May 23, 2007                Counsel for Defendant Howard University

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2007, I caused the foregoing Defendant Howard University's Motion to Dismiss and For Stay of Discovery, supporting memorandum, and proposed Order to be served electronically on Plaintiff's counsel, and by first-class mail, postage prepaid, upon:

Ian I. Smart, Ph.D.
10101 Green Forest Drive
Adelphi, MD  20783


Daniel I. Prywes

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. MARY ROOF,             )

      Plaintiff,          )

v.                 )

HOWARD UNIVERSITY      )     Civil Action No. 1:07-CV-00639 (ESH)

      and            )

DR. IAN I. SMART        )

      Defendants.      )

                       )

---

## DEFENDANT HOWARD UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND FOR A STAY OF DISCOVERY

Defendant Howard University ("University") submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff Mary Roof, Ph.D.'s Complaint for failure to state a claim upon which relief can be granted, and for a stay of discovery pursuant to Local Civil Rule 26.2(a) and Fed. R. Civ. P. 26(c).

## INTRODUCTION AND SUMMARY

Plaintiff is a tenured faculty member at the University. By her own account, over her 18 years at the University, she has been given "increasingly more responsibility," and has chaired several important faculty committees. (Complaint ¶ 17.)

The Complaint alleges that Plaintiff was subject to a "hostile environment" based on her race (Caucasian) in violation of Title VII of the Civil Rights Act of 1964, as amended, and the D.C. Human Rights Act ("DCHRA"). Plaintiff alleges that the hostile environment was created when

Dr. Ian Smart, another faculty member who holds no leadership positions comparable to her own, sent her five "harassing" e-mails in a four-day period between January 9 and 12, 2006. By the time she complained to the University on January 20, 2006, the e-mails had stopped. Plaintiff sent another e-mail critical of the University in April 2007, but the Complaint does not allege that this later e-mail made any racial remarks about Plaintiff or anyone else.

Plaintiff's claims should be dismissed for three reasons:

First, even if all the factual allegations in the Complaint are taken as true, they fail to describe a sufficiently "severe and pervasive" hostile environment to be actionable under Title VII. <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993). As indicated by abundant case law, five e-mails, sent over the course of a few days, do not make a federal case.

Second, the allegations fail to establish any basis for holding the University vicariously liable for the allegedly "offensive" e-mails sent by Dr. Smart which ceased after a four-day period. Dr. Smart was a co-worker, and not Plaintiff's supervisor.

Third, the DCHRA claim is barred by the statute of limitations.

The Court should also stay discovery while this motion is pending in order to avoid the need for the University to respond to burdensome and potentially unnecessary discovery. Plaintiff violated Local Civil Rule 26.2(a) by serving discovery requests before the conference required by Fed. R. Civ. P. 26(f).

## THE COMPLAINT

According to the Complaint, Plaintiff is a tenured Graduate Associate Professor and a faculty member of the University's Department of Modern Languages and Literature. (Complaint ¶ 18.) Plaintiff is Caucasian, and the University is a Historically Black university. (<u>Id</u>. ¶¶ 13, 16.)

Plaintiff has fared well at the University. According to the Complaint, during the eighteen years that she has worked there, she has "been given increasingly more responsibility, as a chair of

the department appointments, promotion and tenure committee, member of the department director search committee, director of independent studies, director of masters theses, and member of a doctoral dissertation committee." (Complaint ¶ 17.)

Defendant Ian Smart, Ph.D. is also tenured and holds the rank of Professor in the same Department as Plaintiff. (Complaint ¶ 20.) Dr. Smart is of "African descent," and is a "native of Trinidad." (Id. ¶ 19.) Although Dr. Smart holds a higher academic rank than Plaintiff, the Complaint does not allege that Dr. Smart supervised Plaintiff in any way.

Defendant Smart holds views that are highly critical of the University. According to the Complaint, he wrote a book detailing his perception that "Howard's identity as a 'Historically Black College and University' is tarnished because it operates like a Civil War-era plantation for its majority African-American student body." (Complaint ¶ 21.) He is the "author of a personal blog" and wrote a book entitled *Dude, Where's My HBCU?* in which he espouses his views. (Id. ¶¶ 21-22.) Because the University has a "majority African American" faculty and student body (id. ¶ 15), Dr. Smart's views are directed toward Black faculty and administrators at the University as well as others.

Between January 9, 2006 and January 12, 2006, Smart sent some University faculty members and staff, including Plaintiff, the five e-mails referenced in Plaintiff's Complaint. (Complaint ¶¶ 23-28.) Plaintiff characterizes these as "offensive emails that allude to Roof as a privileged Caucasian plantation mistress." (Id. ¶ 3.) However, in the e-mails Dr. Smart primarily suggests that Plaintiff shares the same views that he attributes to the Black majority of faculty at the University – namely, that the University operates as a "Civil-War era plantation." (Complaint ¶ 21.)

According to the Complaint:

3

-- Dr. Smart sent a January 9, 2006 e-mail which claimed that Plaintiff doubted the "viability and even the validity of any graduate program in modern languages and literature at a 'Negro' college, even at the 'Mecca.'"  (Complaint ¶ 24.)

-- Dr. Smart sent an e-mail on January 10, 2006, describing a "nightmare" in which he was in the military and Plaintiff was a "brigadier general."  (Complaint ¶ 25.)  No racial component is alleged.

-- Dr. Smart sent an e-mail on January 11, 2006, questioning whether Plaintiff enjoys some "special privileged status" at the "Uncle Tom's campus," and referring to her as "an apparently Caucasian woman in her sixties" who is "at best a mediocre scholar."  (Complaint ¶ 26.)

-- Dr. Smart sent an e-mail on January 11, 2006, with a parody of "slave talk" addressed to "Miss Mary," including the phrase in which he satirically says of himself:  "Ah sure is a stupid nigger."  (Complaint ¶ 27.)

-- Dr. Smart sent an e-mail on January 12, 2006, claiming that the University's Graduate School of Arts and Sciences espouses the view that Blacks should "fit into white society as second-class citizens," and that Plaintiff concurs with that view.  (Complaint ¶ 28.)

The Complaint proceeds to allege that Plaintiff complained on January 20, 2006 to the Department Chair and others who "were direct recipients" of Dr. Smart's e-mails.  (Complaint ¶¶ 31-32.)  The Complaint alleges that the University took no action respecting her complaint about Dr. Smart.  (Id. ¶ 39.)  The Complaint at various points faults the University for not taking corrective action after Plaintiff complained, and after she filed an EEOC charge on March 11, 2006.[1]

---

[1]     Nowhere does the Complaint fault the University for not taking "corrective action" between January 9, 2006 (the date of the first e-mail) and January 20, 2006 (the date of Plaintiff's first internal complaint).  In any event, the face of the Complaint establishes that no "corrective action" was needed after January 12, 2006 because Dr. Smart had ceased sending allegedly "offensive" e-mails to Plaintiff.

(Id. ¶¶ 3-4, 34-35, 39, 51.)   The Complaint does not allege that Plaintiff ever filed a complaint with the D.C. Office of Human Rights, or that the EEOC referred Plaintiff's charge with that agency to the D.C. Office of Human Rights.

According to the Complaint, approximately 14-1/2 months after the January 2006 e-mails, Dr. Smart on April 2, 2007 sent an e-mail to multiple University faculty members, including Plaintiff, and staff which "compared a three-member University committee on which Roof sits with characters in his book *Dude, Where's My HBCU?*" (Complaint ¶ 29.)   The Complaint does not allege that this e-mail made any negative reference to her race or singled her out from among the other committee members for critical comment.

After proceeding through the EEOC complaint process, Plaintiff filed her suit on April 4, 2007.  The Complaint alleges a racially discriminatory "hostile environment" under two counts.

The first count alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (2007).  The second count alleges a violation of the DCHRA.  D.C. Code §§ 2-1401.01 *et seq.* (2007).

On May 14, 2007, Plaintiff's counsel served extensive discovery requests on the University, including:  First Set of Interrogatories; First Request for the Production of Documents; First Request for Admissions; and a Notice for a Rule 30(b)(6) Deposition of the University on 15 different topics. (Ex. A.)   Plaintiff has declined to agree to a stay of discovery until after this motion is decided.  The parties have not yet had the conference required by Fed. R. Civ. P. 26(f).  Pursuant to the Court's Minute Order of May 17, 2007, defendant Dr. Smart's answer or response to the Complaint is not even due until June 14, 2007.

## ARGUMENT

### A.    THE STANDARD FOR DISMISSAL UNDER RULE 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a Complaint may be dismissed "for failure to state a claim upon which relief can be granted." Under this standard, the Court should dismiss a case where the plaintiff has not stated an actionable claim even if the Complaint is construed in the light most favorable to the plaintiff and all of its allegations are taken as true. Gilvin v. Fire, 259 F.3d 749, 756 (D.C. Cir. 2001); Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). As we show next, that is the case here.

### B.    BASED ON THE ALLEGATIONS, PLAINTIFF CANNOT ESTABLISH THAT THERE WAS AN ACTIONABLE "HOSTILE ENVIRONMENT"

The factual allegations in Plaintiff's Complaint, even if all taken as true, are legally insufficient to establish a "hostile environment" under Title VII. Nor are they actionable under the DCHRA, which is construed consistently with Title VII.[2]

The Complaint alleges only five "offensive" e-mails, written over the course of four consecutive days by a dissident faculty member, during Plaintiff's 18-year career at the University. Moreover, most of the e-mails simply direct toward Plaintiff the same types of critical comments that Dr. Smart has made about the University generally. There was no physically threatening conduct. The e-mails at most were isolated, offensive utterances made in the sort of sharp-tongued and eccentric debate often found in academia.

To establish a claim for a discriminatory "hostile environment" under Title VII, a plaintiff must prove that a workplace is "permeated with 'discriminatory intimidation, ridicule and insult,' . . .

---

[2]    "The legal standard for discrimination under the DCHRA is substantively the same as under Title VII." Dickerson v. SecTek, Inc., 238 F. Supp. 2d 66, 73 (D.D.C. 2002); Arthur Young & Co. v. Sutherland, 631 A.2d 354, 361-62 (D.C. 1993).

that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create

an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (citation

omitted). Factors to be considered are "frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with the employee's work performance." 510 U.S. at 23.

The "conduct must be extreme to amount to a change in the terms and conditions of

employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (emphasis added).

"[O]ffhand comments, and isolated incidents (unless extremely serious) will not amount to a

discriminatory changes in the 'terms and conditions of employment.'" Id. The standards for

judging hostility "are sufficiently demanding to ensure that Title VII does not become a 'general

civility code.'" Id. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998). In order

for an actionable "hostile environment" to exist, the conduct "must be both objectively and

subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the

victim in fact did perceive to be so." Faragher, 524 U.S. at 787 (emphasis added).

There are important, further limitations on "hostile environment" claims. As this Court has

held in a sex discrimination case, Title VII "does not prohibit all forms of workplace harassment,

only those directed at discrimination because of sex." Stewart v. Evans, 275 F.3d 1126, 1133 (D.C.

Cir. 2002). Furthermore, "workplace harassment does not violate Title VII merely because the

'words have sexual content or connotation,' but only if members of one sex are disadvantaged in the

terms and conditions of their employment because of the harassment." (Id.)

Crass or rude comments alone are not unlawful, because Title VII does not "serve as a

remedy for all instances of verbal or physical harassment, for it does not 'purge the workplace of

vulgarity.'" Stewart, 275 F.3d at 1133 (citation omitted).

In <u>Stewart</u>, the D.C. Circuit ruled that "[e]ven a few isolated incidents of offensive conduct do not amount to actionable harassment." 275 F.3d at 1134 (emphasis added). This principle is critical here. At most, the e-mails sent by Dr. Smart are "isolated instances of offensive conduct." They were not "physically threatening," nor were they "frequent" but rather they were clustered in a four-day period without any recurrence of frequent e-mails of the same nature. <u>Harris</u>, 510 U.S. at 23.

The Complaint does not indicate that the April 2, 2007 e-mail contained any "hostile" comment directed to Plaintiff based on her <u>race</u>. Even if it did, the total sum of allegedly "offensive" e-mails – and the 14-1/2 month gap between those in January 2006 and the one in April 2007 – would still fall far short of that necessary to state an actionable claim. As this Court held in <u>Carter v. Greenspan</u>, 304 F. Supp. 2d 13, 24 (D.D.C. 2004)(J. Huvelle), to sustain an harassment claim, "the alleged incidents must be '<u>more than episodic</u>; they must be sufficiently <u>continuous</u> and concerted in order to be deemed pervasive.'"[3] (Emphasis added)(citation omitted.) Plaintiff's claim fails this test.

Numerous other courts have dismissed "hostile environment" claims alleging a greater number of incidents than those alleged here, spread over a longer period of time. <i>E.g.</i>, <u>George v. Leavitt</u>, 407 F.3d 405, 416-17 (D.C. Cir. 2005) (statements by three employees over a six-month period telling a plaintiff to "go back where [she] came from," and separate acts of yelling and hostility, were isolated instances that did not rise to the level of severity necessary to find a hostile work environment); <u>Hussain v. Nicholson</u>, 435 F.3d 359, 365-68 (D.C. Cir.) (although plaintiff

---

[3]    <i>See</i> <u>Hopkins v. Baltimore Gas & Elec. Co.</u>, 77 F.3d 745, 753 (4th Cir. 1996) (incidents of sexual harassment occurring intermittently over a seven-year period with gaps between incidents as long as a year is likely insufficient to establish Title VII liability); <u>Chaple v. Johnson</u>, 453 F. Supp. 2d 63, 75 (D.D.C. 2006) (no hostile environment could be found "since the actions took place during several different time periods").

alleged twelve instances of disparaging conduct by his employer, no reasonable jury could find a

hostile environment because several claims were exaggerated and the remaining alleged behavior was

not extreme), *cert denied*, 127 S. Ct. 494 (2006); Singh v. United States House of Representatives, 300

F. Supp. 2d 48, 54-57 (D.D.C. 2004); Jones v. Potter, 301 F. Supp. 2d 1, 9-10 (D.D.C. 2004); Lester

v. Natsios, 290 F. Supp. 2d 11, 32 (D.D.C. 2003) (a single incident of sending a Ku Klux Klan letter

"is not enough to create a pervasive hostile work environment actionable under Title VII,

notwithstanding its seriousness as an isolated event"); Bryant v. Brownlee, 265 F. Supp. 2d 52, 65

(D.D.C. 2003) ("[a] few discrete incidents of racially-discriminatory remarks by co-workers do not

suggest that the entire catalog of facially neutral actions by plaintiff's employer were, in fact, racially

motivated").[4]

Finally, while the anti-discrimination laws certainly apply to the University and faculty

members like Dr. Smart, the Court should be wary of intruding into the Constitutionally protected

area of academic freedom.  The courts have recognized that the First Amendment protects the right

of faculty members to engage in academic debates and pursuits, and to express controversial ideas

and opinions, even if outside "a pall of orthodoxy." Keyishian v. Board of Regents, 385 U.S. 589,

603 (1967).[5] "Academic freedom thrives . . . [in] the independent and uninhibited exchange of ideas

among teachers and students . . .." Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 225

---

[4]    Indeed, it is debatable whether some of the e-mails (particularly those on January 10 and 12, 2006) even made any negative reference to Plaintiff's race, and the April 2, 2007 e-mail is not alleged to have done so.  The e-mails generally can be construed as "lamentations" about the "Plantation" atmosphere at the University, rather than as about Plaintiff's race.  Brownlee, 265 F. Supp. 2d at 65 ("it is debatable whether Ms. Ng's comments could be construed as racially harassing" as they could be "reasonably construed as laments about the presence of racial discrimination in government").

[5]    The Supreme Court has "long recognized that, given the important purpose of public education and the expansive freedoms of speech and thought associated with the university environment, universities occupy a special niche in our constitutional tradition." Grutter v. Bollinger, 539 U.S. 306, 329 (2003).

n. 12 (1985). Several of Dr. Smart's e-mails can be read as simply commenting on issues of public

concern respecting the appropriate role of a Historically Black University, and as challenging the

views of the various persons including Dr. Roof, rather than as attacking Plaintiff based on her race.

As such, the Constitutional protection given the expression of such views should be honored by the

Court, and such communications should not be considered as part of a "hostile environment."

### C.    THE UNIVERSITY HAS NO VICARIOUS LIABILITY FOR DR. SMART'S ALLEGEDLY "HARASSING" COMMUNICATIONS

Even if Dr. Smart's communications are deemed to have created a "hostile environment," as

a matter of law the University could not have any vicarious liability given the fact that Dr. Smart's

last offensive e-mail (on January 12, 2006) occurred only three days after the first one (on January 9,

2006), and eight days before Plaintiff first complained about it (January 20, 2006).

In cases of harassment by supervisors, employers have an affirmative defense to Title VII

liability as outlined in Faragher.[6] The Complaint, however, does not allege that Dr. Smart supervised

Plaintiff. The fact that he had a higher rank (Professor vs. Associate Professor) is of no moment

absent an allegation that Dr. Smart had some supervisory authority over Plaintiff. Mikels v. City of

Durham, 183 F.3d 323, 331-32 (4th Cir. 1999), *cited with approval in* Curry v. District of Columbia, 195

F.3d 654, 659 (D.C. Cir. 1999), *cert. denied*, 530 U.S. 1215 (2000).

In a case, like this, of alleged co-worker harassment, the employer "may be held liable for the

harassment of one employee by a fellow employee (a non-supervisor) if the employer knew or

should have known of the harassment and failed to implement prompt and appropriate corrective

action." Curry v. District of Columbia, 195 F.3d at 660. *See* Carter v. Greenspan, 304 F. Supp. 2d

---

[6]    Where, as here, the employee has not been subject to a "tangible" adverse "employment action," the employer can escape liability if it shows that it (a) "exercised reasonable care to prevent and correct promptly any . . . harassing behaviour, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807.

13, 26 (D.D.C. 2004)(J. Huvelle).  The premise of this legal rule is that, for the employer to be held liable, there must be additional harassment <u>after</u> the employer becomes aware of the alleged harassment.  *See* <u>Jarvis v. Simatron International, Inc.</u>, 223 F. Supp.2d 981, 987 (N.D. Ill. 2002) (employer is not liable when, after the plaintiff complained, the co-worker "did 'not really' bother her again").

In this case, Plaintiff's first complaint about the alleged harassment occurred on January 20, 2006, <u>after</u> the alleged, harassing conduct of January 9-12, 2006 was already completed. Accordingly, it is of no moment whether the University took "corrective action" or not, because there was nothing further to correct.  The Complaint does not allege that any e-mails or other communications were sent after January 12, 2006 that referenced Plaintiff's race in a disparaging way.

In short, Plaintiff has not pled any facts which, if taken as true, would establish the University's vicarious liability for Dr. Smart's January 2006 e-mails even assuming *arguendo* that they created a "hostile environment" for Plaintiff.

### D.    PLAINTIFF'S DCHRA CLAIMS ARE TIME-BARRED

The January 2006 e-mails all occurred more than one year before suit was filed on April 4, 2007.  As noted above, Plaintiff did not allege that the April 2, 2007 e-mail sent by Dr. Smart did anything more than "attack[] and compare[] a three-member committee on which Roof sits with characters in his book Dude, *Where's My HBCU?*" (Complaint ¶ 29.)

Accordingly, even if there was a "hostile environment," the last "hostile" act  alleged in the Complaint involving race occurred on January 12, 2006, more than one year before suit was filed on April 4, 2007.  The second count of the Complaint, alleging a violation of the DCHRA, should therefore be dismissed in light of the DCHRA's one-year statute of limitations for private causes of

action.[7]  D.C. Code § 2-1403.16(a).  This is not a case where "at least 'one act contributing to the claim'" occurred within the one-year limitations period, as required for Plaintiff to avoid the DCHRA's statute of limitation.  Lively v. Flexible Packaging Ass'n , 830 A.2d 874, 892 (D.C. 2003).[8]

### E.    THE COURT SHOULD STAY DISCOVERY

Plaintiff unreasonably insists on commencing intensive discovery while this motion to dismiss is pending.  Plaintiff's counsel has launched a blitz of discovery, including interrogatories, document requests, requests for admissions, and a deposition notice for a 15-topic Rule 30(b)(6) deposition, before this case has even reached the starting gate of the Rule 26(f) conference.  (Ex. A.)

Plaintiff's service of discovery is untimely.  Local Civil Rule 26.2(a) provides that, with certain exceptions that are inapplicable, "a party may not seek discovery from any sources before the parties have conferred as required by Rule 26(f), F. R. CIV. P."  Yet Plaintiff has insisted on doing so, even after the University's counsel requested that Plaintiff agree to a stay of discovery.

Unless a stay is of discovery is granted, the University risks having to incur a substantial burden and expense even if the Court grants this motion within a few weeks.  In that eventuality, Plaintiff will certainly not offer to compensate the University.  The net result will be an unnecessary and pointless waste of attorneys fees and expenses which could have been used by the University for worthwhile causes such as scholarships, research, and caring for the ill at the University's hospital.

---

[7]    A defendant may raise the affirmative defense of statute of limitations via a Rule 12(b)(6) motion when the facts that give rise to the defense are clear from the face of the complaint.  Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998).

[8]    While the DCHRA allows a plaintiff to toll the running of the limitations period following the filing of a complaint to the D.C. Office of Human Rights ("DC OHR") , D.C. Code § 2-1403.16(a), the Complaint does not allege that plaintiff ever filed such a submission with DC OHR.  Therefore, any claim under the DCHRA was not time barred while the EEOC considered Plaintiff's EEOC charge.

There is no particular cause for Plaintiff's urgency.    This case involves allegations respecting a grand total of six e-mails, all of which Plaintiff has in her hands.  Dr. Smart's Answer (or other response to the Complaint) is not due until June 14, 2007.  There is no reason to fear that any short delay, while this motion to dismiss is pending, will prejudice Plaintiff in any way.  At issue here is pointless zeal by Plaintiff, and nothing else.

Pursuant to Fed. R. Civ. P. 26(c), the Court should therefore grant a protective order precluding discovery until after it has ruled on this motion to dismiss and after the Rule 26(f) conference.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint.  The Court should also stay Plaintiff's efforts to take discovery pending the later of the Rule 26(f) conference or this Court's ruling on the University's motion to dismiss.

Respectfully Submitted,

Daniel I. Prywes (D.C. Bar No. 342394)
Stacey Terry Ormsby (D.C. Bar No. 490995)
BRYAN CAVE LLP
700 Thirteenth Street, N.W., Suite 700
Washington, D.C. 20005
Phone: (202) 508-6000
Fax:    (202) 220-7394

Dated: May 23, 2007                                Counsel for Defendant Howard University

13

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DR. MARY ROOF, | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. 1:07-cv-00639 |
|  | ) Hon. Ellen S. Huvelle |
| HOWARD UNIVERSITY., *et al.*, | ) |
| Defendants. | ) |

## PLAINTIFF MARY ROOF'S FIRST SET OF INTERROGATORIES TO DEFENDANT HOWARD UNIVERSITY

These Interrogatories are served pursuant to Rule 33 of the Federal Rules of Civil Procedure. You are requested to respond within thirty (30) days of the Local Rule 16.3 Conference.

Answer each Interrogatory separately, in writing, and under oath. In answering the interrogatories, please furnish all information available to you, including information possessed by any agent, employee, or attorney representing you. These Interrogatories are continuing in nature. If you obtain further material information prior to trial, you are required to supplement your answers promptly.

### Definitions

For the purposes of these Interrogatories, the terms used herein shall have the following meanings unless the context requires otherwise:

1

1.  You," "your" or "Defendant" means Defendant Howard University and Howard University's predecessors, divisions, subsidiaries, present and former officers, agents and employees, independent contractors, and all other persons acting on behalf of Howard University's successors, predecessors, divisions, or subsidiaries.

2.  "Dr. Smart, "Ian I. Smart, or "Smart" means Defendant Dr. Ian I. Smart.

3.  "Dr. Roof," "Mary Roof," "Roof," or "Plaintiff" means Plaintiff Dr. Mary Roof, who is also known as Maria Roof.

4.  "Person" means any natural person, firm, association, partnership, sole proprietorship, corporation, joint venture, business trust, government, federation, public entity or any other kind of business or legal entity.

5.  "Document" or "documents" mean all written, typed or printed matter and all magnetic or other records or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, electronic mail, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you. The definition also includes all copies unless such copies (including any notations or marks thereon) are exact duplicates of documents already produced.

6.  "Communication" means all oral conversations, discussions, letters, email, telegrams, memoranda, and any other transmission of information in any other form, both oral and written.

7.  "Report" means the written, oral, formal, or informal communication by any aggrieved individual.

8.  "Employment" shall mean the doing of work by one for another in exchange for pay, such as the relationship between Roof and Howard University wherein Roof performs tasks as directed, supervised and evaluated by agents of Howard University in exchange for which Howard University provides pay and wages to Roof.

9.  The words "supervisor" and "supervisory" shall mean persons within Howard University who are/were considered by Howard University to be or have been superior to Roof. This includes any individual from whom Roof received direction, guidance,

2

instruction, or to whom Roof reports/reported her activities for evaluation, as well as those who are/were authorized by Howard University to formally evaluate the quality of Roof's performance, to recommend or decide questions of hiring, promotion, payment of bonuses, increases or decreases in compensation, and changes in job duties and responsibilities.

10.     "File" means any collections or group of documents maintained, held, stored or used together, including, without limitations, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

11.     "Relating to" and "relates to" mean, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the Interrogatory.

12.     The words "describe" and "identify" when referring to a person are defined to require that you set forth the following information:

> (1.)     Full Name;
> (2.)     Present or last known residential address;
> (3.)     Present or last known telephone number;
> (4.)     Present occupation, job title, employer, and employer's address;
> (5.)     Occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular interrogatory; and
> (6.)     In the case of any person other than an individual, identification of the officer, employee or agent most closely connected with the subject matter of that Interrogatory and of the officer who is responsible for supervising that officer or employee with regard to the subject matter of that Interrogatory.

13.     The words "describe" and "identify" when referring to a document are defined to require that you set forth the following information:

> (1.)     The nature (e.g., letter, handwritten note) of the document;
> (2.)     The title or heading that appears on the document;
> (3.)     The date of the document and the date of each addendum, supplement or other addition or change;
> (4.)     Identification of the author and of the signer thereof, and of the person on whose behalf or at whose request or direction the document was prepared or delivered;
> (5.)     Identification of the addressee or recipient thereof, if any; and
> (6.)     The present locations of the document, and the name, address, position or title and telephone number of the person or persons having custody.

14. The words "describe" and "identify" when referring to an event, occurrence, act, transaction or conversation are defined to require that you set forth the following information:

      (1)    The date and place of such event
      (2)    The persons involved
      (3)    Description of the event

15. Where necessary, the above information shall be supplemented in sufficient detail to allow a determination that such document, when produced, is in fact the document so described.

16. Notwithstanding any definition set forth above, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## Instructions

1. Separately answer each part of each Interrogatory.

2. For each document or other requested information asserted to be privileged or otherwise excludable from discovery, identify that document or other requested information. State the specific basis for such claim of privilege or other ground for exclusion. For each such document, state the date of the document, the name, job title and address of the person who prepared it; the name, address, and job title of the person to whom it was addressed or circulated or who saw it; the name, job title and address of the person now in possession of the document; and, a description of the subject matter of the document.

3. For any requested document no longer in existence, or which cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located and the reasons therefore, and identify each person having knowledge concerning such disposition or loss and each document evidencing its prior existence and/or the fact concerning such document's nonexistence or loss.

4. Whenever you are requested to give specific information, such as a date or figure, and you cannot give the exact information, state that you cannot give the exact information and give your best estimate thereof.

5. In response to each Interrogatory, identify each person who participated in the preparation of the response, including without limitation, all persons who drafted proposed or actual responses or who provided information or documents to be used in the preparation of responses, and identify and describe each file and each document consulted or referred to in the preparation of the answer.

6.      Unless otherwise specified, each Interrogatory requires a continuing response, and you are requested to reasonably supplement or amend your responses to these Interrogatories based upon any and all information and documents obtained after filing such responses.

7.      The term "all" shall mean "any and all" or "each and every," and shall be construed to render the discovery request as inclusive as possible.

8.      Terms that are singular shall be construed as plural and terms that are plural shall be considered singular so as to render each discovery request as inclusive as possible.

9.      References to masculine, feminine, or neutral gender shall be construed as masculine, feminine, or neutral so as to render the discovery request as inclusive as possible.

10.      If you believe that any discovery request is overly broad or unduly vague, you are instructed to respond to the discovery request and to indicate the limitation you have given to it and any definition you have given to obviate your objection.

11.      The term "and" and the term "or" shall be construed either conjunctively or disjunctively, whichever shall render the discovery request more inclusive.

12.      Capitalization or non-capitalization of defined terms is irrelevant.

## Interrogatories

1.  Identify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that tends to support a position that you have taken or intend to take in this action and state the subject matter of the information possessed by that person.

2.  Identify any and all individuals with knowledge of factual allegations set forth in Roof's Complaint.  For each individual, identify the specific allegation of which he/she has knowledge and describe in detail the full extent of his/her knowledge, provide their residence address and telephone number, and provide their title and position if they are employed by, or affiliated with, Howard University.

3.  Describe any and all programs, outreach efforts, or policies administered by Howard University to prevent or address discrimination in its workplace, in particular racial discrimination, in effect during the past ten (10) years.  Include in your answer how and when any such policy was disseminated to each employee and the training employees receive as to what constitutes discrimination.

4.  Identify any and all non-African American employees and any and all employees not of African descent of Howard University who have left Howard University's employ for any

reason over the past ten (10) years and describe the reason for the employee's departure, whether such departure was voluntary or involuntary.

5. Identify any and all employees of Howard University who have reported discrimination, or conduct of a similar nature to that which is described in Roof's Complaint, whether substantiated or unsubstantiated, to Howard University or to any administrative or judicial body, either orally or in writing, in the last ten (10) years.

6. Describe the investigation, if any, and disciplinary action, if any, which resulted from each and every report of discrimination identified in Interrogatory No. 5, the employment status of each employee who made or was the subject of such a report, and if no longer employed by Howard University, the reason for the employee's termination. In describing the investigation, please identify any and all employees of Howard University who are responsible for receiving, investigating, or responding to reports of discrimination, and if such activities are conducted by other entities or individuals on behalf of Howard University, identify those entities or individuals.

7. Describe all communications, conversations or discussions regarding Roof's complaints about Dr. Ian I. Smart's conduct and her request for Howard University's action in response to Dr. Smart's conduct that occurred between management or supervisory staff of Howard University and Roof, or between management or supervisory staff of Howard University and other management or supervisory staff of Howard University, or between management or supervisory staff of Howard University and any other person; in your description of relevant conversations and discussions, identify when and where the conversations and discussions were held, who was present, and what was said.

8. Describe all communications, conversations or discussions over the last ten (10) years regarding Dr. Ian I. Smart's conduct that occurred between management or supervisory staff of Howard University and Dr. Smart, or between management or supervisory staff of Howard University and other management or supervisory staff of Howard University, or between management or supervisory staff of Howard University and any other person; in your description of relevant conversations and discussions, identify when and where the conversations and discussions were held, who was present, and what was said.

9. Describe any and all reprimands or corrective action taken in response to Smart's conduct as reported by Dr. Mary Roof.

10. Identify and describe the job title, job description, and evaluation criteria for any and all positions held by Dr. Ian I. Smart throughout his employment with Howard University.

11. Identify any and all supervisors or employees who had supervisory authority over Dr. Ian I. Smart throughout his employment with Howard University.

12. Identify each and every document in your custody or control relating to any communication concerning Dr. Ian I. Smart's job performance or conduct during his employment by Howard University.

13. Describe all practices, procedures, policies, and other means used by Howard University to manage the use and retention of any documents at all times over the past ten (10) years.

14. Identify all email systems used by Howard University in the past ten (10) years and identify all email known to Howard University (including creation date, recipient(s), and sender) that relate to, refer to, or are relevant to the subject matter of this litigation.

15. Identify and describe Howard University's policies on creating and maintaining data backups performed on all computer systems currently or previously in use. In doing so, specifically identify the following:

   a. Describe the tape or backup rotation and explain how backup data is maintained and state whether the backups are full or incremental including all rotation schedules.

   b. All procedures and devices used to back up the software and the data, including but not limited to name(s) of backup software used, the frequency of the backup process, and type of tape backup drives, including name and version number, type of media (i.e. DLT, 4mm, 8mm, AIT). State the capacity (bytes) and total amount of information (gigabytes) stored on each tape.

   c. State whether backup storage media is kept off-site or on-site. Include the location of such backup and a description of the process for archiving and retrieving on-site media.

   d. The individual(s) who conducts the backup and the individual who supervises this process.

   d. Provide a detailed list of all backup sets, regardless of the magnetic media on which they reside, showing current location, custodian, date of backup, a description of backup content and a full inventory of all archives.

   e. Identify all extra-routine backups applicable for any servers identified in response to these interrogatories, such as quarterly archival backup, yearly backup, etc. and identify the current location of any such backups.

16. If you answer any Request for Admission propounded to you by Roof with any response other than an unqualified admission, please describe the complete factual and legal basis for your response.

7

17. Separately for each response given to every one of the foregoing interrogatories, identify the person, other than counsel, responsible for providing the information for, or formulating the response, and identify each document relied on in formulating the response.

Respectfully submitted,

R. Scott Oswald, DC Bar No. 458859
Adam Augustine Carter, DC Bar No. 437381
Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
acarter@employmentlawgroup.net
*Counsel for Plaintiff*

8

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of May, 2007, a true and correct copy of

the foregoing Plaintiff Mary Roof's first set of Interrogatories to Defendant Howard

University was served upon the following:

Daniel I. Prywes, Esq.
BRYAN CAVE
700 Thirteenth Street, N.W.
Washington, D.C.  20005-3960


Adam Augustine Carter

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. MARY ROOF, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:07-cv-00639 |
| | ) Hon. Ellen S. Huvelle |
| HOWARD UNIVERSITY, *et al.*, | ) |
| Defendants. | ) |

## PLAINTIFF DR. MARY ROOF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT HOWARD UNIVERSITY

These Requests for Production of Documents are served pursuant to Rule 34 of the Federal Rules of Civil Procedure. You are required to respond within thirty (30) days of the date of the Local Rule 16.3 Conference.

Answer each Request for Production of Documents separately, in writing, and under oath. In answering the Request for Production of Documents, please furnish all information available to you, including information possessed by any agent, employee, or attorney representing you. These Requests for Production of Documents are continuing in nature. If you obtain further material information prior to trial, you are required to supplement your answers promptly.

### Definitions

For the purposes of these Document Requests, the terms used herein shall have the following meanings unless the context requires otherwise:

1

1.  You," "your," or "Defendant" means Defendant Howard University and Howard University's predecessors, divisions, subsidiaries, present and former officers, agents and employees, independent contractors, and all other persons acting on behalf of Howard University's successors, predecessors, divisions, or subsidiaries.

2.  "Dr. Ian I. Smart," "Ian I. Smart" or "Smart" means Defendant Dr. Ian I. Smart.

3.  "Dr. Roof," "Mary Roof," "Roof," or "Plaintiff" means Plaintiff Mary Roof, who is also known as Maria Roof.

4.  "Person" means any natural person, firm, association, partnership, sole proprietorship, corporation, joint venture, business trust, government, federation, public entity or any other kind of business or legal entity.

5.  "Document" or "documents" mean all written, typed or printed matter and all magnetic or other records or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, electronic mail, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you. The definition also includes all copies unless such copies (including any notations or marks thereon) are exact duplicates of documents already produced.

6.  "Communication" means all oral conversations, discussions, letters, email, telegrams, memoranda, and any other transmission of information in any other form, both oral and written.

7.  "Report" means the written, oral, formal, or informal communication by any aggrieved individual.

8.  "Employment" means the doing of work by one for another in exchange for pay, such as the relationship between Roof and Howard University wherein Roof performs tasks as directed, supervised and evaluated by agents of Howard University in exchange for which Howard University provides pay and wages to Roof.

9.  The words "supervisor" and "supervisory" shall mean persons within Howard University who are or were considered by Howard University to be or have been superior to Roof. This includes any individual from whom Roof received direction, guidance, instruction, or to whom Roof reports or reported her activities for

evaluation, as well as those who are or were authorized by Howard University to formally evaluate the quality of Roof's performance, to recommend or decide questions of hiring, promotion, payment of bonuses, increases or decreases in compensation, and changes in job duties and responsibilities.

10.    "File" or "files" mean any collection or group of documents maintained, held, stored or used together, including, without limitations, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

11.    "Relating to" and "relates to" mean, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the Document Request.

12.    Notwithstanding any definition set forth above, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## Instructions

1.    Separately answer each part of each Request for Production of Documents.

2.    To the extent a privilege is claimed with respect to any document covered by this Request for Production of Documents, you are requested to state, with respect to such document, the following as applicable:

   a.   The author of such document;
   b.   To whom such document is addressed;
   c.   The date upon which such document was prepared;
   d.   The title or heading of such document;
   e.   The type of document (e.g., hand-written note, memorandum, tape recording, journal, desk calendar, books of account, etc.);
   f.   Any other information that might be necessary to describe such document sufficiently for a designation thereof;
   g.   The present location and custodian of such document; and
   h.   The grounds for claiming privilege.

3.    For any requested document no longer in existence, or which cannot be located, identify the document, state how and when it passed out of existence, or when it could no longer be located and the reasons therefore, and identify each person having knowledge concerning such disposition or loss and each document evidencing its prior existence and/or the fact concerning such document's nonexistence or loss.

3

4.      If, in responding to this Request for Production, the responding party encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

5.      When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

6.      It is intended that this Request will not solicit any material protected either by the attorney/client privilege or by the work product doctrine which was created by, or developed by, counsel for the responding party after the date on which this litigation was commenced.  If any Request is susceptible of a construction which calls for the production of such material, that material need not be provided and no privilege log pursuant to Fed.R.Civ.P. 26(b)(5) or Discovery Guideline 9(a) will be required as to such material.

7.      If production of any requested document(s) is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

8.      In response to each Request for Production of Documents, identify each person who participated in the preparation of the response, including without limitation, all persons who drafted proposed or actual responses or who provided information or documents to be used in the preparation of responses, and identify and describe each file and each document consulted or referred to in the preparation of the answer.

9.      Unless otherwise specified, each Request for Production of Documents requires a continuing response, and you are requested to reasonably supplement or amend your responses to these Requests for Production of Documents based upon any and all information and documents obtained after filing such responses.

10.     Capitalization or non-capitalization of defined terms is irrelevant.

11.     The term "and" and the term "or" shall be construed either conjunctively or disjunctively, whichever shall render the discovery request more inclusive.

12.     If you believe that any discovery request is overly broad or unduly vague, you are instructed to respond to the discovery request and to indicate the limitation you have given to it and any definition you have given to obviate your objection.

13.    References to masculine, feminine, or neutral gender shall be construed as masculine, feminine, or neutral so as to render the discovery request as inclusive as possible.

14.    The term "any" shall mean "any and all" or "each and every," and shall be construed to render the discovery request as inclusive as possible.

15.    "Including" means "including but not limited to."

16.    The present tense includes the past and future tenses.

17.    Terms that are singular shall be construed as plural and terms that are plural shall be considered singular so as to render each discovery request as inclusive as possible.

### Requests for Production of Documents

Please produce the following:

1.    All documents used, referenced, referred to, relating to, or described in responding to Plaintiff's Interrogatories to Defendant Howard University, if not previously produced.

2.    All documents relating to personnel policies and employment manuals, drafted, implemented, or followed by Howard University in the last ten (10) years.

3.    All documents relating to policies, procedures, protocols, and practices drafted, implemented, or followed by Howard University in the last ten (10) years, including policies, procedures, protocols, and practices regarding discrimination and compliance with Title VII of the Civil Rights Act of 1964, § 42 U.S.C. 2000e *et seq.* (2007) ("Title VII") and the District of Columbia Human Rights Act, § 2-1401.01, *et seq.* (2007) ("DCHRA"), or compliance with any other statutory provisions related to discrimination.

4.    All documents relating to Howard University's discrimination policies and/or complaint procedures in effect during the past ten (10) years, and any documents that evidence Dr. Ian I. Smart's receipt of such policies.

5.    All documents relating to Howard University's discrimination policies and/or complaint procedures in effect during the past ten (10) years, and any documents that evidence Roof's receipt of such policies.

6.    All documents relating to Reports and communications relating to discrimination, or conduct of a similar nature to that which is described in Roof's Complaint, whether substantiated or unsubstantiated, that any employee of Howard University made to Howard University, or to any administrative or judicial body, either orally or in writing, in the last ten (10) years.

5

7.  All documents and communications related to the investigation, if any, and disciplinary action, if any, which resulted from any Report of discrimination directed to Howard University in the last ten (10) years, the employment status of each such employee that made the report or was the subject of such report, and if no longer employed by you, the reason for such employee's termination.

8.  All documents related to the employment of Dr. Ian I. Smart by Howard University, including but not limited to Smart's employment file, job description, job requirements, responsibilities, skill levels, and performance evaluations.

9.  All documents related to the employment of Roof by Howard University, including but not limited to Roof's employment file, job description, job requirements, responsibilities, skill levels, and performance evaluations.

10. All documents concerning Roof's complaints and/or Reports to Howard University about Dr. Ian I. Smart's conduct.

11. Any and all Reports or communications that Howard University received related to Dr. Ian I. Smart from Howard University employees, contractors, alumni, parents, or students.

12. All documents and communications related to the investigation, if any, and disciplinary action, if any, which resulted from each and every Report or communication to Howard University from Roof about Dr. Ian I. Smart's conduct.

13. All documents related to document or data retention policies used by Howard University in the last ten (10) years and any prior versions thereof, including methods for retaining, saving or backing-up information stored on computers that have been wiped-out, and including any documents that list any such computers that have been wiped-out, who used the computer, and the date of wipe-out.

14. All documents relating to Howard University's policies on creating and maintaining data backups performed on all computer systems currently or previously in use.

15. All documents relating to any insurance agreement that may indemnify or reimburse for payments made to satisfy a judgment in this case for any person covered by such an insurance policy who may be liable to satisfy part or all of a judgment which may be entered in this action.

16. If you respond to any Request for Admission propounded to you by Roof with any response other than an unqualified admission, provide any document that supports your response.

17. All documents referred to or identified by any party or witness during any of the depositions conducted in this action.

Respectfully Submitted,

R. Scott Oswald, DC Bar No. 458859
Adam Augustine Carter, DC Bar No. 437381
Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
acarter@employmentlawgroup.net
*Counsel for Plaintiff*

7

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of May, 2007, a true and correct copy of the foregoing Plaintiff Dr. Mary Roof's First Requests for Production of Documents to Defendant Howard University upon the following:

Daniel I. Prywes, Esq.
BRYAN CAVE
700 Thirteenth Street, N.W.
Washington, D.C. 20005-3960

_____
Adam Augustine Carter

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. MARY ROOF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:07-cv-00639 |
| | ) Hon. Ellen S. Huvelle |
| HOWARD UNIVERSITY, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### NOTICE OF RULE 30(b)(6) DEPOSITION
### OF HOWARD UNIVERSITY

PLEASE TAKE NOTICE that Plaintiff Dr. Mary Roof, pursuant to Rule 30(b)(6) of the

Federal Rules of Civil Procedure, will take the deposition upon oral examination of Howard

University ("Howard"), at 9:00 AM on the first business day 11 days from the Local Rule 16.3

Conference at The Employment Law Group, 888 17th Street NW, Suite 900, Washington, D.C.

20006.  The matters on which examination is contemplated are described in Attachment A.

Howard University shall designate one or more officers, directors, or managing agents, or other

persons who consent to testify on its behalf and who shall be prepared to testify as to the

matters designated in Attachment A.  This deposition will be recorded on videotape and/or

stenographically before a Notary Public or other officer authorized to administer oaths, and will

be for the purpose of discovery, for use at trial, and for other lawful purposes.  The deposition

will continue from day to day until completed.  You are invited to attend and cross-examine.

Dr. Mary Roof
By Counsel


R. Scott Oswald, DC Bar No. 458859
Adam Augustine Carter, DC Bar No. 437381
Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
acarter@employmentlawgroup.net
*Counsel for Plaintiff*

Dated: May 14, 2007

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice Of Rule 30(B)(6) Deposition Of Howard University was delivered by couriered hand delivery this 14th day of May, 2007, to:

Daniel I. Prywes, Esq.
BRYAN CAVE
700 Thirteenth Street, N.W.
Washington, D.C. 20005-3960


_____
Adam Augustine Carter

**ATTACHMENT A TO RULE 30(b)(6) NOTICE OF DEPOSITION**
**OF HOWARD UNIVERSITY**

1.  All affirmative defense(s) Howard University expects to assert in its Answer to Plaintiff's Complaint, as well as any affirmative defense(s) Howard University may add at a later date.

2.  All denials to the factual and legal assertions made in Plaintiff's Complaint.

3.  Howard University's Answers to Interrogatories, Responses to Requests for Production of Documents and Requests for Admissions.

4.  Assets and holdings of Howard University.

5.  Any insurance policies and the identity of insurers providing coverage for the conduct alleged in this suit.

6.  Plaintiff Mary Roof's employment with Howard University, including but not limited to her employment file, responsibilities, evaluation criteria used to evaluate her throughout her employment, her compensation package, her qualifications, and her disciplinary history, if any.

7.  Defendant Dr. Ian I. Smart's employment with Howard University, including but not limited to his employment file, responsibilities, evaluation criteria used to evaluate him throughout his employment, his compensation package, his qualifications, and his disciplinary history, if any.

8.  All complaints and/or Reports dealing with discrimination or conduct of a similar nature to that which is described in Plaintiff's Complaint, whether substantiated or unsubstantiated, from any source, made to Defendant Howard University, or any administrative or judicial body, either orally or in writing, in the last ten (10) years.

9.  All complaints and/or Reports about Dr. Ian I. Smart that have been received by Howard University from any source in the last ten (10) years.

10. All investigations, if any, and disciplinary action, if any, which resulted from each and every report identified in Paragraphs No. 8 & 9, the employment status of each employee who made or was the subject of such a report, and if no longer employed by Howard University, the reason for the employee's termination.

11. All communications, conversations and/or discussions regarding Plaintiff's complaints about co-Defendant Dr. Ian I. Smart's conduct and her request for Howard University's action in response to Dr. Smart's conduct that occurred between management/supervisory staff of Howard University and Dr. Roof, or between management/supervisory staff of Howard University and other

4

management/supervisory staff of Howard University or between management/supervisory staff of Howard University and any other person.

12.    All communications, conversations and/or discussions regarding Dr. Ian I. Smart's conduct as alleged in Plaintiff's Complaint that occurred between management/supervisory staff of Howard University and Dr. Smart, or between management/supervisory staff of Howard University and other management/supervisory staff of Howard University, or between management/supervisory staff of Howard University and any other person.

13.    All personnel policies or employment manuals drafted, implemented, or followed by Howard University in the past ten (10) years, related to discrimination, evaluation, promotion, compensation, investigation, complaint, retaliation, disciplinary, and termination policies.

14.    Any and all versions of document/data retention policies used by Howard over the last five (5) years, including methods for retaining, saving, or backing up electronic information stored on computers that may or may not have been deleted, and any such computers with electronic files that have been deleted, including who used the computers, and the date or time period of such deletion(s).

15.    All e-mail systems used by Howard University over the last five (5) years and all e-mails known to Howard University that relate to, or refer to, or are relevant to Mary Roof, Dr. Ian I. Smart, and/or the subject matter of this litigation.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. MARY ROOF, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Case No. 1:07-cv-00639 |
|  | ) Hon. Ellen S. Huvelle |
| HOWARD UNIVERSITY, *et al.*, | ) |
|  | ) |
| Defendants. | ) |

**PLAINTIFF DR. MARY ROOF'S FIRST REQUESTS FOR ADMISSIONS TO
DEFENDANT HOWARD UNIVERSITY**

These Requests for Admissions are served pursuant to Rule 36 of the Federal Rules of

Civil Procedure. You are required to respond within thirty (30) days of the Local Rule 16.3

Conference. In answering these requests, the following instructions and definitions apply to

each request, unless otherwise specifically provided:

1.  The following requests call not only for the knowledge of Defendant Howard University, but also for all knowledge that is available to you by reasonable inquiry, including inquiry of representatives, agents, employees, and attorneys.

2.  As used herein, the terms "you," "your" or "Defendant" means Defendant Howard University and Howard University's successors, predecessors, divisions, subsidiaries, present and former officers, agents and employees, independent contractors, and all other persons acting on behalf of Howard University's successors, predecessors, divisions, or subsidiaries.

3.  "Dr. Roof," "Mary Roof," "Roof" or "Plaintiff" means Plaintiff Dr. Mary Roof, who is also known as Maria Roof.

4.  "Dr. Smart," "Ian I. Smart" or "Smart" means Defendant Dr. Ian I. Smart.

1

5.  "Person" means any natural person, firm, association, partnership, sole proprietorship, corporation, joint venture, business trust, government, federation, public entity or any other kind of business or legal entity.

6.  "Document" or "documents" mean all written, typed or printed matter and all magnetic or other records or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, electronic mail, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys or other agents, whether or not prepared by you. The definition also includes all copies unless such copies (including any notations or marks thereon) are exact duplicates of documents already produced.

7.  "Communication" means all oral conversations, discussions, letters, email, telegrams, memoranda, and any other transmission of information in any other form, both oral and written.

8.  "Report" means the written, oral, formal, or informal communication by any aggrieved individual.

9.  "Employment" means the doing of work by one for another in exchange for pay, such as the relationship between Roof and Howard University wherein Roof performs tasks as directed, supervised and evaluated by agents of Howard University in exchange for which Howard University provides pay and wages to Roof.

10. The words "supervisor" and "supervisory" shall mean persons within Howard University who are/were considered by Howard University to be or have been superior to Roof. This includes any individual from whom Roof received direction, guidance, instruction, or to whom Roof reports/reported her activities for evaluation, as well as those who are/were authorized by Howard University to formally evaluate the quality of Roof's performance, to recommend or decide questions of hiring, promotion, payment of bonuses, increases or decreases in compensation, and changes in job duties and responsibilities.

11. "File" or "files" mean any collection or group of documents maintained, held, stored or used together, including, without limitations, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

12. "Relating to" and "relates to" mean, without limitation, embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the Document Request.

13. Notwithstanding any definition set forth above, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

14. Capitalization or non-capitalization of defined terms is irrelevant.

15. The term "and" and the term "or" shall be construed either conjunctively or disjunctively, whichever shall render the discovery request more inclusive.

16. References to masculine, feminine, or neutral gender shall be construed as masculine, feminine, or neutral so as to render the discovery request as inclusive as possible.

17. The term "any" and the term "all" shall mean "any and all" or "each and every," and shall be construed to render the discovery request as inclusive as possible.

18. "Including" means "including but not limited to."

19. The present tense includes the past and future tenses.

20. Terms that are singular shall be construed as plural and terms that are plural shall be considered singular so as to render each discovery request as inclusive as possible.

21. Notwithstanding any definition set forth above, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## Admissions

1. Admit that Howard University is an employer as defined by Title VII of the Civil Rights Act, § 42 U.S.C. 2000e and the DCHRA § 2-1401.02(10).

2. Admit that Roof is a member of a protected class as defined by the District of Columbia Human Rights Act, D.C. Code Ann. § 2-1401.01 and Title VII of the Civil Rights Act, § 42 U.S.C. 2000e.

3. Admit that Howard is designated a "Historically Black College and University" ("HBCU").

4. Admit that Howard's mission is, in part, to "provide educational opportunities for African-American men and women."

3

5.    Admit that Howard's faculty and student body are majority African American.

6.    Admit that Smart is a tenured Professor of Spanish and a Senior Faculty Member of Howard's Department of Modern Languages and Literatures.

7.    Admit that Smart is one of the over 60 percent of Howard faculty members who are of African descent.

8.    Admit that Roof is a tenured Graduate Associate Professor of Spanish and a Junior Faculty Member of Howard's Department of Modern Languages and Literatures.

9.    Admit that Dr. James J. Davis ("Davis") is the Chairman of Howard's Department of Modern Languages and Literatures.

10.   Admit that Dr. James Donaldson, ("Donaldson") is the Dean of Howard's College of Arts and Sciences.

11.   Admit that between on or about January 9 and January 12, 2006, Smart sent a series of e-mails about Roof to Howard faculty and staff, including the Department of Modern Languages and Literatures chairman, Davis.

12.   Admit that in Smart's emails dated on or about January 9 through January 12, 2006, Smart refers or alludes to Roof as a privileged Caucasian plantation mistress.

13.   Admit that in Smart's email dated on or about January 9, 2006, Smart claimed that Roof doubted "the viability and even the validity of any graduate program in modern languages and literatures at a 'Negro' college, even at the 'Mecca.'"

14.   Admit that in Smart's email dated on or about January 10, 2006, Smart wrote "I dreamt that [the] department had been incorporated into the U.S. military [and] that [. . .] Roof had been reinstated into the officer corp [. . .] as brigadier general [. . .] I screamed in horror at what had become of us.  And then I awoke.  And it was all just a horrible nightmare."

15.   Admit that in Smart's email dated on or about January 11, 2006, Smart wrote "Who is this Mary [. . .] Roof?  Does she enjoy some special privileged status here at the principal Uncle Tom's Campus?"

16.   Admit that in Smart's email dated on or about January 11, 2006, Smart referred to Roof as "an apparently Caucasian woman in her sixties" who "is at best a mediocre scholar" and who "customarily sets the academic bar for both her undergraduate and graduate students at mediocrity."

17.   Admit that in Smart's email dated on or about January 11, 2006, Smart alluded to Roof as a plantation mistress.

4

18.    Admit that in Smart's email dated on or about January 11, 2006, Smart stated "Ah done wrong. My bad. Ah done gone and get Miss Mary mad. Ah sure is a real stupid nigger. Ah hope youall intercede with Miss Mary for me. Ah done gone and mess up again. Miss Mary is de best ting dat could of ever happen to we in dis Department. She does talk Spanish like a native; and she best friend does speak French. So, ah trow mehself at Miss Mary feet. Ah beg she to give me a break dis time. Ah is just one dumb niggerman from de Islands. Allyou talk to she for me."

19.    Admit that in Smart's email dated on or about January 12, 2006, Smart claimed that, like the founder of Howard, Roof is a white supremacist.

20.    Admit that in Smart's email dated on or about January 12, 2006, Smart stated that Howard's founder Major General Oliver Otis Howard "did not intend that his university would do more than train Negroes to fit into white society as second-class citizens. The Howard University Graduate School of Arts and Sciences demonstrated that it espouses and enforces this approach to the (mis-)education of Negroes through its handling of the Ph.D. program in Romance Languages and its general handling of the graduate program in the Department of Modern Languages and Literatures [. . .] Dr. [. . .] Roof has repeatedly renewed her membership in the Graduate School of Arts and Sciences [. . .] Dr. [. . .] Roof has, then, repeatedly reaffirmed her adherence to the philosophy of the Graduate School of Arts and Sciences. I will let you draw the conclusion for yourself."

21.    Admit that on or about April 2, 2007, Smart sent another e-mail about Roof addressed to approximately 10 Howard graduate students, faculty, and staff, including Department of Modern Languages and Literatures Chairman Davis.

22.    Admit that in Smart's e-mail dated on or about April 2, 2007, Smart stated "Life imitates art," and compared a committee on which Roof sits with characters in Smart's book *Dude, Where's My HBCU?*

23.    Admit that on or about April 8, 2007, Smart sent another e-mail about Roof addressed to approximately 49 Howard graduate students, faculty, and staff, including Department of Modern Languages and Literatures Chairman Davis.

24.    Admit that in Smart's e-mail dated on or about April 8, 2007, Smart stated "M.R. is a Caucasian female in her sixties [. . .] M.R. appears to be quite satisfied with her job of mentoring the young black woman [. . .] Indeed, M.R. is in the habit of trotting out her black graduate students to put on a show of their academic prowess [. . .] I do believe that M.R. is helping to make our department the laughing stock of Academe."

25.    Admit that on or about January 20, 2006, Roof sent Davis a letter detailing Smart's harassment and requesting that Howard intervene and take corrective action.

26.    Admit that on or about January 25, 2006, Davis e-mailed Roof, acknowledging receipt of Roof's letter dated on or about January 20, 2006, but offering no instructions or inquiry.

27.   Admit that on or about January 26, 2006, Davis sent a letter to Donaldson attaching Roof's January 20, 2006, letter.

28.   Admit that in his letter to Donaldson dated on or about January 26, 2006, Davis repeated Roof's report that Smart harassed her and that she was "appealing to the University, through [him], to investigate and take appropriate actions against Dr. Smart."

29.   Admit that in his letter to Donaldson dated on or about January 26, 2006, Davis indicated that Davis discussed Roof's case with College of Arts and Sciences Associate Dean, Barbara Griffin, to whom Davis also forwarded Roof's letter and supporting documentation.

30.   Admit that on or about May 17, 2006, Davis sent an e-mail to Roof acknowledging receipt of Roof's EEOC complaint but offering no instructions or inquiry.

31.   Admit that on or about April 2, 2007, Roof reported Smart's continued harassment to Howard officials.

32.   Admit that on or about January 22, 2007, Howard's Office of the General Counsel sent Roof a letter referring her to three university policies.

33.   Admit that Howard has not issued any corrective action or reprimand of Smart as a result of Roof's reports.

34.   Admit that Smart subjected Roof to unwelcome harassment.

35.   Admit that Smart's harassment of Roof was based on her status as a Caucasian.

36.   Admit that Smart's harassment of Roof unreasonably interfered with Roof's work.

37.   Admit that Smart's harassment of Roof created a hostile work environment for Roof.

38.   Admit that all documents produced by Howard in response to Plaintiff's Requests for Production of Documents are true and accurate copies of the original documents.

Respectfully Submitted,

_____

R. Scott Oswald, DC Bar No. 458859
Adam Augustine Carter, DC Bar No. 437381
Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
acarter@employmentlawgroup.net
*Counsel for Plaintiff*

7

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 14th day of May, 2007, a true and correct copy of the

foregoing Plaintiff Dr. Mary Roof's First Request for Admissions to Defendant Howard

University upon the following:

Daniel I. Prywes, Esq.
BRYAN CAVE
700 Thirteenth Street, N.W.
Washington, D.C. 20005-3960


_____
Adam Augustine Carter

8

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. MARY ROOF,                          )
                                        )
      Plaintiff,                )
                                        )
v.                                      )
                                        )
HOWARD UNIVERSITY                       )    Civil Action No. 1:07-CV-00639 (ESH)
                                        )
    and                              )
                                        )
Dr. IAN I. SMART                        )
                                        )
      Defendants.               )
                                        )

## ORDER

    Upon consideration of the foregoing motion by defendant Howard University to dismiss plaintiff Mary Roof's Complaint, and for a stay of discovery, and upon consideration of any opposition thereto, defendant Howard University's reply, and the entire record;

IT IS HEREBY ORDERED:

1.  The motion is GRANTED.

2.  Discovery is stayed until the later of the parties' conference under Fed. R. Civ. P. 26(f) and the Court's resolution of this motion.

3.  Plaintiff's Complaint against defendant Howard University is dismissed.

_____
Judge Ellen S. Huvelle
United States District Judge

Copies to:

R. Scott Oswald, Esq.
Adam Augustine Carter, Esq.
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900
Washington, D.C. 20006

**_Counsel for Plaintiff_**

Daniel I. Prywes, Esq.
Stacey T. Ormsby, Esq.
BRYAN CAVE LLP
700 Thirteenth Street, N.W., Suite 700
Washington, D.C. 20005

**_Counsel for Defendant Howard University_**

Ian I. Smart, Ph.D.
10101 Green Forest Drive
Adelphi, MD  20783

**_Co-Defendant._**

2