## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DR. MARY ROOF** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No. 1:07-cv-00639** |
| | ) **Hon. Ellen S. Huvelle** |
| | ) |
| **HOWARD UNIVERSITY,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **DR. IAN I. SMART,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## AMENDED CIVIL COMPLAINT FOR EQUITABLE
## AND MONETARY RELIEF AND DEMAND FOR JURY

### INTRODUCTION

1.      Plaintiff, Dr. Mary Roof ("Roof") files this Complaint of racial discrimination against Defendant Howard University ("Howard") in violation of Title VII of the Civil Rights Act of 1964, § 42 U.S.C. 2000e *et seq.* (2007) ("Title VII") and against Defendants Howard and Dr. Ian I. Smart ("Smart") in violation of the District of Columbia Human Rights Act, § 2-1401.01, *et seq.* (2007) ("DCHRA").

2.      Roof is Caucasian and a junior faculty member at Howard, a "Historically Black College and University."  Smart is a native of Trinidad and a senior faculty member at Howard.

3.      When Smart sent a series of unprovoked and offensive emails that allude to Roof as a privileged Caucasian plantation mistress, Roof reported the harassment and requested Howard's immediate intervention.

4.      Instead of taking immediate and corrective action, however, Howard was silent.

5.      When Roof filed a discrimination claim with the United States Equal Employment Opportunity Commission ("EEOC"), Howard remained silent.

6.      Nearly a year after Smart began harassing Roof, and despite the EEOC's issuance to Roof of a Notice of Right to Sue, Howard's only action was to send Roof a letter advising her to read Howard's sexual and gender discrimination policies.

7.      Although Smart continues to harass Roof, Howard has not issued any corrective action or reprimand of Smart.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it contains a federal question arising under the Constitution and laws of the United States.  Supplemental jurisdiction over the Plaintiff's pendent state-law claim is conferred by 28 U.S.C. § 1367.

9.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Defendant Howard is located in this judicial district.

**PARTIES**

10.     Plaintiff Roof is a professor at Defendant Howard and a resident of the State of Maryland.

11.     Defendant Howard is located in and conducts business in the District of Columbia.

12.     Defendant Smart is a professor at Howard and a resident of the State of Maryland.

**FACTUAL ALLEGATIONS**

<u>**Background**</u>

13.     Howard was founded in 1867 following the Civil War and is designated a "Historically Black College and University" ("HBCU").

14.     Howard's mission is to "provide educational opportunities for African-American men and women."

15.     Howard's faculty and student body are majority African American.

16.     Roof is Caucasian.

17.     Roof was hired by Howard in 1989 as a Lecturer in its Department of Romance Languages.  In Roof's approximately 18 years working for Howard, she has been given increasingly more responsibility, as a chair of the department appointments, promotion and tenure committee, member of the department director search committee, director of independent studies, director of masters' theses, and member of a doctoral dissertation committee.

18.    Roof is currently a tenured Graduate Associate Professor of Spanish and a Junior Faculty Member of Howard's Department of Modern Languages and Literatures.

19.    Smart is a native of Trinidad and one of the over 60 percent of Howard faculty members who are of African descent.

20.    Smart is currently a tenured Professor of Spanish and a Senior Faculty Member of Howard's Department of Modern Languages and Literatures.

21.    Smart is the author of *Dude, Where's My HBCU?* a book detailing Smart's perception that Howard's identity as a "Historically Black College and University" is tarnished because it operates like a Civil War-era plantation for its majority African-American student body.

22.    Smart is also the author of a personal blog in which he writes about Howard's purported decline into a Civil War-era plantation.

**Smart's Harassment of Roof**

23.    Between on or about January 9 and January 12, 2006, Smart sent a series of unprovoked e-mails about Roof to approximately 46 Howard graduate students, staff, and faculty, including the Department of Modern Languages and Literature chairman, tenured faculty, tenure-track faculty, instructors, lecturers, student teaching assistants, and administrative staff.

24.    On or about January 9, 2006, Smart sent an e-mail claiming that Roof doubted "the viability and even the validity of any graduate program in modern languages and literature at a 'Negro' college, even at the 'Mecca.'"

4

25.    On or about January 9, 2006, Roof emailed Smart, requesting that he retract his e-mail. Smart did not comply with Roof's request.

26.    On or about January 10, 2006, Smart sent another e-mail, stating "I dreamt that [the] department had been incorporated into the US military [and] that [. . .] Roof had been reinstated into the officer corp [. . .] as brigadier general [. . .] I screamed in horror at what had become of us.  And then I awoke.  And it was all just a horrible nightmare."

27.    On or about January 11, 2006, Smart sent a third e-mail asserting that Roof had privileged status at the University because she is Caucasian.  Smart stated "Who is this Mary [. . .] Roof?  Does she enjoy some special privileged status here at the principal Uncle Tom's Campus?"  Smart referred to Roof as "an apparently Caucasian woman in her sixties" who "is at best a mediocre scholar" and who "customarily sets the academic bar for both her undergraduate and graduate students at mediocrity."

28.    On or about January 11, 2006, and after Roof e-mailed Smart asking him to retract his comments, Smart sent a fourth e-mail alluding to Roof as a plantation mistress.  Smart stated "Ah done wrong.  My bad.  Ah done gone and get Miss Mary mad.  Ah sure is a real stupid nigger.  Ah hope you all intercede with Miss Mary for me.  Ah done gone and mess up again.  Miss Mary is de best ting dat could of ever happen to we in dis Department.  She does talk Spanish like a native; and she best friend does speak French.  So, ah trow mehself' at Miss Mary feet.  Ah beg she to give me a break dis time.  Ah is just one dumb niggerman from de Islands.  All you talk to she for me (sic)."

29.    On or about January 12, 2006, Smart sent a fifth e-mail claiming that like the founder of Howard, Roof is a white supremacist.  Smart stated that Howard's founder Major General Oliver Otis Howard "did not intend that his university would do more than train

Negroes to fit into white society as second-class citizens. The Howard University Graduate School of Arts and Sciences demonstrated that it espouses and enforces this approach to the (mis-)education of Negroes through its handling of the Ph.D. program in Romance Languages and its general handling of the graduate program in the Department of Modern Languages and Literatures [. . .] Dr. [. . .] Roof has repeatedly renewed her membership in the Graduate School of Arts and Sciences [. . .] Dr. [. . .] Roof has, then, repeatedly reaffirmed her adherence to the philosophy of the Graduate School of Arts and Sciences. I will let you draw the conclusion for yourself."

30.     On or about April 2, 2007, Smart sent a sixth e-mail to approximately 20 Howard faculty and staff, including Department of Modern Languages and Literature Chairman Davis. Stating "Life imitates art," Smart attacked and compared a three-member committee on which Roof sits with characters in his racially-charged book *Dude, Where's My HBCU?*

31.     On or about April 8, 2007, Smart sent a seventh e-mail to approximately 49 graduate students, staff, and faculty, including Department of Modern Languages and Literatures Chairman Davis, stating "M.R. is a Caucasian female in her sixties [. . .] M.R. appears to be quite satisfied with her job of mentoring the young black woman [. . .] Indeed, M.R. is in the habit of trotting out her black graduate students to put on a show of their academic prowess [. . .] I do believe that M.R. is helping to make our department the laughing stock of Academe."

32.     As a result of these unprovoked attacks, Roof has experienced stress, anxiety, pain, mental duress, and distraction that interfere with her research, writing, and ability to participate in functions and programs at Howard.

6

**Roof's Reports of Smart's Harassment and Howard University's Inaction**

33.     Because the Chairman of the Department of Modern Languages and Literatures, Dr. James J. Davis ("Davis"), and other Howard University officials were direct recipients of Smart's e-mails, they were aware of the harassment at the time of its occurrence.

34.     On or about January 20, 2006, Roof sent Davis a letter detailing Smart's harassment and requesting that Howard intervene and take corrective action.

35.     On or about January 25, 2006, Davis e-mailed Roof, acknowledging receipt of her letter, but offering no instructions or inquiry.

36.     On or about January 26, 2006, Davis sent a letter to Dr. James Donaldson ("Donaldson"), Dean of the College of Arts and Sciences, attaching Roof's January 20, 2006 letter.  In his letter, Davis repeated Roof's report that Smart harassed her and that she was "appealing to the University, through [him], to investigate and take appropriate actions against Dr. Smart."  Davis asked Donaldson for advice on how to handle the report and suggested that Donaldson meet with him to discuss the harassment.  Davis also indicated that he discussed Roof's case with College of Arts and Sciences Associate Dean, Barbara Griffin, to whom he also forwarded Roof's letter and supporting documentation.

37.     On or about March 11, 2006, and after waiting approximately 60 days without any action by Chairman Davis, Dean Donaldson, or Associate Dean Griffin, or any other official at Howard, Roof reported the discrimination to the EEOC.

38.     On or about April 27, 2006, after the EEOC interviewed Roof, Roof filed a discrimination complaint with the EEOC.

39.     On or about May 17, 2006, Davis sent an e-mail to Roof acknowledging receipt of the EEOC complaint but once again offering no instructions or inquiry.

40.     On or about December 7, 2006, the EEOC issued a Letter of Determination, finding reasonable cause that Howard violated Title VII because it knowingly failed to respond to the harassment that created a hostile work environment for Roof.

41.     In the approximately seven months between Davis' acknowledged receipt of the EEOC complaint and the EEOC's issuance of a Determination Letter on or about December 7, 2006, Howard did not respond to Roof's report of discrimination or issue any corrective action or reprimand of Smart.

42.     On or about January 3, 2007, the EEOC issued Roof a Notice of the Right to Sue which Roof received on or about January 9, 2007.

43.     On or about January 22, 2007, and one year from the date of Roof's report of harassment to Howard officials, Howard's Office of the General Counsel sent Roof a letter referring her to three university policies she "should read and become familiar."

44.     On or about April 2, 2007, and approximately one year and three months from the date of Smart's first harassing e-mail, Roof reported Smart's continued harassment to Howard officials.

45.     On or about April 8, 2007, Roof reported Smart's continued harassment to Howard officials.

46.     As of the date of this filing, Howard has not issued any corrective action or reprimand of Smart.

## FIRST CAUSE OF ACTION

Title VII of the Civil Rights Act of 1964, § 42 U.S.C. 2000e *et seq.* (2007)
(as to Defendant Howard University)

47.    The allegations of the preceding paragraphs are re-alleged as if fully set forth below.

48.    Because it is engaged in an industry affecting commerce and has fifteen or more employees, at all relevant times herein Howard was and is an "employer," pursuant to Title VII of the Civil Rights Act, § 42 U.S.C. 2000e.

49.    Smart subjected Roof to unwelcome harassment, as defined in *Howard University v. Best*, 484 A.2d 958, 978 (D.C. 1984).

50.    Smart's unwelcome harassment of Roof was based on her protected status, as required by Title VII of the Civil Rights Act, § 42 U.S.C. 2000e-2(a)(1).

51.    Smart's unwelcome harassment of Roof unreasonably interfered with her work performance, as articulated in *Clipper v. Billington*, 414 F. Supp. 2d 16, 24 (D.D.C. 2006).

52.    Smart's unwelcome harassment of Roof was sufficiently severe to create a hostile work environment, as defined by *Park v. Howard University*, 71 F.3d 904, 906 (D.C. Cir. 1995), *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), *Kriesch v. Johanns*, 468 F. Supp. 2d 183, 187 (D.D.C. 2007).

53.    Roof informed Howard officials of Smart's harassment.

54.    Because Howard knew or should have known of Smart's harassment of Roof and failed to implement prompt and corrective action, Howard engaged in racial discrimination against Roof by enabling a hostile work environment. *See Clipper v.*

*Billington*, 414 F. Supp. 2d 16, 24 (D.D.C. 2006), *Curry v. District of Columbia*, 195 F.3d

654, 660 (D.C. Cir. 1999).

  55. Roof exhausted her administrative remedies with the EEOC, which issued

Roof a Notice of Right to Sue on January 3, 2007.

**SECOND CAUSE OF ACTION**
District of Columbia Human Rights Act, § 2-1401.01, *et seq.* (2007)
(as to Defendant Howard University and Defendant Smart)

  56. The allegations of the preceding paragraphs are re-alleged as if fully set forth

below.

  57. At all relevant times herein, Roof was and is a member of a protected class as

defined by the District of Columbia Human Rights Act, D.C. Code Ann. § 2-1401.01.

  58. At all relevant times herein, Howard was and is an "employer," pursuant to

the DCHRA § 2-1401.02(10).

  59. Smart aided and abetted, and/or attempted to engage in discriminatory acts

forbidden by the DCHRA § 2-1402.62 and explained in *Mitchell v. National R.R. Passenger*

*Corp.*, 407 F. Supp. 2d 213, 241 (D.D.C. 2005).

  60. Smart subjected Roof to unwelcome harassment, as defined by the DCHRA.

  61. Smart's unwelcome harassment of Roof was based on her protected status.

  62. Smart's unwelcome harassment of Roof was sufficiently severe to affect a

term, condition, and or/privilege of Roof's employment.

  63. Because Roof exhausted her administrative remedies with the EEOC, which

issued a Notice of Right to Sue to Roof on January 3, 2007 and that Roof received on

January 8, 2007, Roof also exhausted her administrative remedies with the District of

Columbia Office of Human Rights and has a right to bring this suit. *See Fowler v. District of Columbia*, 122 F. Supp. 2d 37, 42 (D.D.C. 2000).

## PRAYER FOR RELIEF

WHEREFORE, and based on the foregoing discrimination, Roof respectfully requests that she be awarded the following relief:

64.    Economic damages for actual monetary losses sustained as direct result of the discrimination and compensation for any special damages sustained as a result of the discrimination;

65.    Compensatory (non-economic) damages, including damages for mental and emotional distress;

66.    Punitive damages to punish Defendant Howard and Defendant Smart for knowing discrimination and to deter them from similar conduct toward other employees;

67.    Injunctive, declaratory or equitable relief, as may be appropriate, to prevent further harm to others and the public caused by Defendant Howard; and

68.    Reasonable litigation costs, expert fees and reasonable attorneys' fees, together with all other relief available from law and equity.

Respectfully submitted,


R. Scott Oswald, DC Bar No. 458859
Adam Augustine Carter, DC Bar No. 437381
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.


Adam Augustine Carter, Esq.

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of June, 2007, a true and correct copy

of the foregoing Amended Civil Complaint for Equitable and Monetary Relief and Demand for

Jury has been served upon the following via ECF:


Daniel I. Prywes, Esq.
BRYAN CAVE
700 Thirteenth Street, N.W.
Washington, D.C.  20005-3960

*Counsel for Defendant Howard University*

and

John F. Karl, Jr.
Karl & Tarone
900 Seventeenth Street, N.W.
Suite 1250
Washington, D.C. 20006

*Counsel for Defendant Dr. Ian I. Smart*


Adam Augustine Carter


13