UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. MARY ROOF, | ) |
| Plaintiff, | ) |
| v. | ) |
| HOWARD UNIVERSITY | ) Civil Action No. 1:07-CV-00639 (ESH) |
| and | ) |
| DR. IAN I. SMART | ) |
| Defendants. | ) |

## DEFENDANT HOWARD UNIVERSITY'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

Defendant Howard University ("University") submits this reply memorandum in further support of its motion to dismiss the Amended Complaint (hereinafter "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) and (c), and for a stay of discovery.

## INTRODUCTION

Plaintiff's refrain in her Opposition is that Smart's e-mails were sufficiently "severe and pervasive" to support a hostile-environment claim. (Roof Opp. at 1, 7, 9) (emphasis added.) Repetition, however, does not make it so under the "demanding" requirements established by the U.S. Supreme Court. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

This case is uniquely suited to dismissal under Fed. R. Civ. P. 12(b)(6) and 12(c) because the alleged harassment occurred exclusively through seven written e-mails that are before the Court. Five were sent in a four-day period, and the remaining two were sent almost 15 months later. There is no other conduct that needs to be considered to evaluate "the totality of the circumstances."

This Court should dismiss Plaintiff's Complaint because suits alleging significantly more serious conduct have been dismissed as insufficiently "extreme" to state a hostile-environment claim. Faragher, 524 U.S. at 788. At most, this case involves isolated offensive comments that are not actionable under Title VII.

Similarly, there is no basis for vicarious liability by the University for Dr. Smart's e-mails. The University acted promptly and effectively in January 2006 to curtail Dr. Smart's e-mails, and the January 2006 e-mails therefore cannot be considered as a basis for vicarious liability. Curry v. District of Columbia, 195 F.3d 654, 661 (D.C. Cir. 1999), cert. denied, 530 U.S. 1215 (2000). The University cannot be held vicariously liable for the April 2007 e-mails because, on their own, they did not create a hostile environment.

The Court should act now to dismiss the Complaint, thereby sparing both the University and Plaintiff the burden of extensive discovery and other pre-trial proceedings on the way toward the inevitable dismissal of this case at a later stage. Dismissal is especially appropriate since Plaintiff has now dismissed Dr. Smart as a defendant, and Dr. Smart has concurrently publicly apologized to Plaintiff (Exhibit 1) making a repetition of his conduct unlikely.

## ARGUMENT

### A. THE STANDARD FOR DISMISSAL UNDER RULES 12(b)(6) AND 12(c)

The parties agree that Plaintiff's Complaint should be dismissed if it "fails to 'plead enough facts to state a claim to relief that is plausible on its face.'" (Roof Opp. at 6.)

Plaintiff also does not dispute that, in determining this issue, "'the court need not . . . accept legal conclusions cast in the form of factual allegations." Rattigan v. Gonzales, 2007 U.S. Dist. LEXIS 39227, at *17-18 (D.D.C. May 31, 2007) (J. Huvelle). Therefore, the allegations in the Complaint alleging a "hostile environment" need not be accepted because they are legal conclusions that are not supported by the facts as pled in the Complaint. Bell Atlantic Corp. v. Twombly, 127

S. Ct. 1955, 1974 (U.S. 2007) (plaintiff in discrimination case must plead those facts "necessary to state his claim and the grounds showing entitlement to relief"). *See* Moore v. Ashcroft, 401 F. Supp. 2d 1, 42 (D.D.C. 2005).

With respect to the University's alternative motion (under Fed. R. Civ. P. 12(c)) to dismiss based on the pleadings, Plaintiff does not object to the Court's consideration of the seven e-mails sent by Dr. Smart, and correspondence sent by Dr. Davis, which were attached as exhibits to the University's Answer. (Roof Opp. at 17.) Therefore, the Court may and should consider those writings in deciding this motion. Fed. R. Civ. P. 12(b)(c).

### B. PLAINTIFF CANNOT ESTABLISH THAT THERE WAS AN ACTIONABLE "HOSTILE ENVIRONMENT"

Plaintiff argues that she has alleged sufficiently "extreme" conduct to state a viable "hostile-environment" claim. That contention, however, should be rejected given the controlling legal principles and the undisputed facts alleged in the Complaint and set forth in the pleadings.

First, Plaintiff uses rhetorical overkill in her argument that the e-mails communications were "severe and pervasive." For example:

-- Plaintiff claims that during "the first episode of Smart's harassment of Roof, Smart sent e-mails daily." (Roof Opp. at 10.) However, this "first period" covered only four days (January 9-12, 2006), followed by 450 days of quiet. They were not "daily" in any meaningful sense.

-- Plaintiff characterizes all of the seven e-mails as "overtly racist." (Roof Opp. at 2.) However, Plaintiff does not dispute the University's showing that three of the e-mails (January 10 and 12, 2006, and April 2, 2007) made no reference to Plaintiff's race at all. (University Opening Br. at 4-5, 10.) Plaintiff never even complained that the last two e-mails (dated April 2 and 8, 2007) were "racially" harassing. (Complaint ¶ 30; Answer ¶ 30, exhibit F; Answer ¶ 44, exhibit I; Answer ¶¶ 31, 45, exhibits G and J.)

-- Plaintiff claims that Dr. Smart "singled out" Plaintiff "repeatedly because of her race." (Roof Opp. at 9.) However, the Complaint alleges that Plaintiff directed the same kinds of critiques of a "plantation" mentality toward both (a) the historically Black University and its Graduate School, and (b) Plaintiff. (*Compare* Complaint ¶¶ 21-22 and ¶¶ 24, 29, 30.) *See* Bryant v. Brownlee, 265 F. Supp. 2d 52, 65 (D.D.C. 2003) ("[a] few discrete incidents of racially-discriminatory remarks by co-workers do not suggest that the entire catalog of facially neutral actions by plaintiff's employer were, in fact, racially motivated").

Second, Plaintiff would have the Court disregard the abundant case law holding that a hostile-environment claim is subject to dismissal where the challenged conduct is not "extreme," "more than episodic," and consists of no more than "isolated incidents." Faragher, 524 U.S. at 788. *See* Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) ("'mere utterance of an epithet which engenders offensive feelings in a employee' . . . does not sufficiently affect the conditions of employment to implicate Title VII") (citation omitted).

The University cited numerous cases (University Opening Br. at 11-13) holding that "isolated incidents of offensive conduct," even if far worse in frequency and content than the actions described in the Complaint, "do not amount to actionable harassment." Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002). *See* Rattigan v. Gonzales, 2007 U.S. Dist. LEXIS 39227, at *17-18 (dismissing hostile-environment claims based on disparate comments "spread out over a period of two years," in which supervisors made crude threats of violence, accused the plaintiff of disloyalty, and threatened the plaintiff with demotion).

Instead of confronting this authority head on, Plaintiff attempts to distinguish as "not analogous" only two of the numerous cases that the University included in a string of citations: Singh v. United States House of Representatives, 300 F. Supp. 2d 48 (D.D.C. 2004); and Jones v. Potter, 301 F. Supp. 2d 1 (D.D.C. 2004). (Roof Opp. at 9.) Plaintiff's inability to distinguish the

4

many other cases relied upon speaks for itself.[1] The rulings in Singh and Jones were two among many where the courts have dismissed a "hostile environment" claim on grounds that the allegations are not sufficiently "extreme." <u>In contrast, Plaintiff's Opposition fails to cite a single case that is "analogous" to this one and supports the legal viability of her claim.</u>

<u>Third</u>, Plaintiff argues that even if Dr. Smart's conduct was not "pervasive" (because it involved only seven e-mails clustered at two ends of a fifteen month period),[2] it was sufficiently "severe" to create a hostile environment. In such cases, however, the "conduct must be <u>extreme</u> to amount to a change in the terms and conditions of employment," with "offhand comments, and <u>isolated incidents (unless extremely serious)</u>" being insufficient. Faragher, 524 U.S. at 788 (emphasis added). None of the "isolated incidents" alleged in this case were "extremely serious." Moreover, the two cases cited by Plaintiff (in which hostile-environment claims were allowed to proceed) fail to support her position that the demanding standard for such claims is satisfied here.

Plaintiff's reliance (at 10-11) on Dickerson v. Sectek, Inc., 238 F. Supp. 2d 66, 83-84 (D.D.C. 2002), is curious, since in that case the defendant "regularly" spoke to plaintiffs

---

[1] *E.g.*, George v. Leavitt, 407 F.3d 405, 416-17 (D.C. Cir. 2005) (statements by three employees over a six-month period telling a plaintiff to "go back where [she] came from," and separate acts of yelling and hostility, were isolated instances that did not rise to the level of severity necessary to find a hostile work environment); Hussain v. Nicholson, 435 F.3d 359, 365-68 (D.C. Cir.) (although plaintiff alleged twelve instances of disparaging conduct by his employer, no reasonable jury could find a hostile environment because several claims were exaggerated and the remaining alleged behavior was not extreme), *cert denied*, 127 S. Ct. 494 (2006); Stewart v. Evans, 275 F.3d at 1134; Rattigan v. Gonzales, 2007 U.S. Dist. LEXIS 39227, at *17-18; Akonji v. Unity Healthcare, Inc., 2007 U.S. Dist. LEXIS 30060, at *35 (D.D.C. April 24, 2007) (dismissing hostile environment claim as insufficiently "severe" based on "five discrete acts" of harassment [including touching] "over the two-year period as well as infrequent inappropriate comments and staring").

[2] As Plaintiff recognizes, conduct is not "pervasive" if it is not "sufficiently continuous and concerted" (Roof Opp. at 8), and instead is only "episodic." Faragher, 524 U.S. at 787 n. 1; Carter v. Greenspan, 304 F. Supp. 2d 13, 24 (D.D.C. 2004).

"disrespectfully," and there was a "persistent use" of degrading words toward the plaintiff, accompanied by "threats," "taunts," and "yelling." It does not compare to this case in either severity or pervasiveness. The same is true of Kriesch v. Johanns, 468 F. Supp. 2d 183, 188 (D.D.C. 2007), another case cited by Plaintiff. (Roof Opp. at 11.) In Kriesch, the Court found that a hostile environment claim could proceed on the basis of allegation that "Plaintiff's supervisors carried out a campaign of discrimination, retaliation, and harassment over a period of years, and certain acts that were part of the campaign took the form of psychological abuse and physical intimidation." 468 F. Supp. 2d at 188 (emphasis added). Nothing of the sort is alleged here.

The "totality of the circumstances" test does Plaintiff no good. As Plaintiff notes, courts are to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. These factors all weigh against Plaintiff's claim:

-- The "offensive" e-mails were few in number. None contained any racial epithets.

-- None of the e-mails "physically" threaten Plaintiff or make any other kind of threats toward Plaintiff.

-- The e-mails were "episodic," as they were clustered in two periods separated by fifteen months: January 9-12, 2006, and early April 2007.

-- Three of these e-mails (January 10 and 12, 2006, and April 2, 2007) make no reference to Plaintiff's race. (Answer, exhibits B, E, F.)

-- In at least two of the e-mails, Dr. Smart merely levelled the same criticism of Plaintiff as those directed by Dr. Smart against the Historically Black University as a whole and its Graduate School in particular. (Answer, exhibits A, E.)

6

-- Plaintiff held leadership positions at the University (Complaint ¶ 17), while Plaintiff was a dissident who attacked the leadership of the Historically Black University for its "plantation" mentality. (Id. ¶ 21.) This context undermines any claim that Plaintiff could "reasonably" feel that she was in a racially hostile environment. Faragher, 524 U.S. at 787.

Plaintiff emphasizes Dr. Smart's broad dissemination of his e-mails. (Roof Opp. at 2, 10.) However, no authority is offered for Plaintiff's suggestion that such dissemination converts a set of isolated "offensive utterances" into something else. Harris, 510 U.S. at 21. Whether circulated to one or dozens, the e-mails were not sufficiently "extreme" in frequency, severity, or any other measure as to constitute a "hostile environment."

Fourth, Plaintiff repeatedly asserts that the University's "failure to intervene and correct the situation" should be a factor in determining whether the challenged conduct by Smart was sufficiently "extreme" to create a hostile environment. (E.g., Roof Opp. at 10, 12.) That argument, however, is wrong on the facts and wrong on the law.

On the facts, it is undisputed that Dr. James Davis, the Department Chair, took prompt action on January 13, 2006 (four days after the first e-mail) to seek a halt to Dr. Smart's e-mails, and Dr. Smart agreed to halt them. (Answer, exhibit K.) It is strange for Plaintiff to complain that Dr. Davis did not move quickly enough, since he moved with greater dispatch than Plaintiff who took another full week to submit a complaint about Dr. Smart.[3] Likewise, Dr. Davis moved expeditiously in April 2007 to take corrective action on the basis of the same issues that Plaintiff complained about at that time. (Answer, exhibits I, J, L. M.)

---

[3] Plaintiff complains that the University did not take "formal action" (Roof Opp. at 10), even though such "formal" action is not necessary if the conduct is halted through other means. Curry v. District of Columbia, 195 F.3d 654, 661 (D.C. Cir. 1999) (employer's response, though not including "formal disciplinary action" was adequate because "the clear, prompt admonitions were appropriate and, at least for this conduct, effective"), cert. denied, 530 U.S. 1215 (2000).

7

On the law, Plaintiff is wrong because she is improperly conflating the standard for vicarious liability (holding the employer liable unless it takes prompt and appropriate corrective action)[4] and the more fundamental question whether the offensive conduct was sufficiently "extreme" in the first instance to constitute a "hostile environment." As a matter of logic, the "hostile environment" determination is separate and more fundamental. None of the factors cited by the Supreme Court or the District of Columbia Circuit support the proposed conflation.

Finally, Plaintiff misses the point about the scope of academic freedom in this case. (Roof Opp. at 12-13.) We did not argue that the First Amendment protects all of Dr. Smart's communications. Some of them include language that might be considered racially offensive if all inferences are resolved in Plaintiff's favor. Instead, we argued that First Amendment principles protect those of his e-mails that "can be read as simply commenting on issues of public concern respecting the appropriate role of a Historically Black University, and as challenging the views of the various persons including both Black University faculty and administrators as well as Dr. Roof." (University Opening Br. at 14) (emphasis added). Since at the very least the e-mails dated January 10 and 12, 2006 (Answer, exhibits A and E) are of this character, the number of allegedly "offensive" e-mails that can be constitutionally considered in this Title VII claim is reduced by at least two.

### C.   THE UNIVERSITY HAS NO VICARIOUS LIABILITY FOR DR. SMART'S ALLEGEDLY "HARASSING" COMMUNICATIONS

Plaintiff's Opposition failed to address the gist of our argument against vicarious liability, and the import of the District of Columbia's ruling in Curry.

In Curry, the court considered two consecutive periods of harassment by the plaintiff's co-worker. Because the employer took prompt and effective action to halt the conduct in the first period (involving sexually blatant remarks), through a prompt "admonition" to the co-worker, the

---

[4]   Curry, 195 F.3d at 660; Carter, 304 F. Supp. 2d at 26.

court ruled out any vicarious liability based on the first conduct even though "no formal disciplinary action" was taken. 195 F.3d at 661. When the employer learned more than a year later of further harassment by the co-worker (involving glaring), the court ruled that a question of fact existed whether the employer's response to the second conduct was sufficient given his status as a "repeat offender." 195 F.3d at 662. Significantly, however, the court allowed the claim for vicarious liability to proceed based solely on the alleged conduct in the second period (glaring) which was treated as sufficient to state a hostile-environment claim.[5] 195 F.3d at 662-63.

This case is similar. No reasonable claim can be made that the University did not respond promptly to the first wave of Dr. Smart's January 9-12, 2006 e-mails through the Department Chair's "admonition" to Dr. Smart on January 13, 2006. That admonition was issued only four days after his conduct began and a full week before Plaintiff complained. Just as in Curry, the University had reason to believe that the problem was resolved given Dr. Smart's agreement to curtail his conduct. No "formal disciplinary action" was needed for the University to satisfy its duty.

Once Dr. Smart began to send his e-mails again fifteen months later, the University could be held vicariously liable for the second wave of co-worker misconduct only if (a) the University failed to take prompt corrective action suitable for a "repeat offender," and (b) the conduct on its own was sufficient to establish a hostile environment. Based on the authorities cited in Part B of our opening brief and this brief, the April 2 and 8, 2007 e-mails alone are insufficient to establish a hostile environment. This is especially so since the April 2 e-mail had no racial element at all. Therefore, the University could have no vicarious liability.

---

[5] The Court of Appeals expressed doubts whether the staring itself could support a hostile-environment claim, but it assumed that it did because the lower court's determination on this issue was not challenged on appeal. Curry, 195 F. 3d at 662 n. 16.

### D. THE COURT SHOULD STAY DISCOVERY

Plaintiff appears content to delay any discovery at this point in the litigation. (Roof Opp. at 18.) Therefore, there should be no objection to a stay of discovery until the Court rules on this motion.

### CONCLUSION

For the foregoing reasons and those stated in our opening brief, the Court should dismiss Plaintiff's Amended Complaint.

Respectfully submitted,

_____
Daniel I. Prywes (D.C. Bar No. 342394)
Stacey Terry Ormsby (D.C. Bar No. 490995)
BRYAN CAVE LLP
700 Thirteenth Street, N.W., Suite 700
Washington, D.C. 20005
Phone: (202) 508-6000
Fax:   (202) 220-7394

Dated: July 25, 2007          Counsel for Defendant Howard University

## CERTIFICATE OF SERVICE

I hereby certify that, on July 25, 2007, I caused a true and correct copy of the foregoing Defendant Howard University's Reply Memorandum to be served upon the following via ECF:

    R. Scott Oswald, Esq.
    Adam Augustine Carter, Esq.
    The Employment Law Group, P.C.
    888 17th Street, N.W., Suite 900
    Washington, D.C. 20006

    *Counsel for Plaintiff*

    John F. Karl, Jr., Esq.
    Karl & Tarone
    Suite 1250
    900 Seventeenth Street, N.W.
    Washington, D.C. 20006

    *Counsel for Defendant Ian Smart, Ph.D.*

_____
Daniel I. Prywes

# EXHIBIT 1

**From:** Smart, Ian I.
**Sent:** Friday, July 20, 2007 3:51 PM
**To:** Roof, Mary E.; Rey, Alberto; Davis, James J.; 'amarilis@bugbytes.com'; 'engombognonga@howard.edu'; 'hatha23@hotmail.com'; 'ecat55@yahoo.com'; 'animanclement@yahoo.fr'; 'mmlyabaya@earthlink.net'; 'evamakita@hotmail.com'; 'zoetnkeu@vahoo.fr'; Wallace, Karen Smyley; 'michaelbplatt@verizon.net'; 'aerayen@erols.com'; Boldridge, Effie J.; 'michikosaito@hotmail.com'; 'cwilliams@onemodelplace.com'; Mondragon, Amelia; Poser, Yvonne M.; 'pveoiina@yahoo.com'; 'noIanjm@hotmail.com'; Hines, Marion; 'aissatouh@hotmail.com'; Dunzo, Annette Ivory; Rodriguez, Aleida A.; Woll, Josephine Z.; Pfaff, Francoise; 'khan229@yahoo.com'; 'S-B-S@mail.ru'; 'mesphocle@howard.edu'; Rodriguez, Antonio; 'crosswind07@yahoo.com'; 'doneygerardo@yahoo.com'; Logan, Paul E; 'keit31@msn.com'; Holte, Matilder R.; 'glagoke@hotmail.com'; Frost, Alphonso A.; Crawford, Brenda H; 'agtuckerus@yahoo.com'; 'ernjacksonzz@yahoo.com'; Williams, Tamiko S.; 'cvwhite-jackson@Howard.edu'; 'raslanmoutraji@hotmail.com'; 'Elvira Luna'; Tibbits, Mercedes V.; 'alimoses@aol.com'
**Cc:** 'jfklaw@igc.apc.org'; 'iansmart@verizon.net'
**Subject:** Apology to Dr. Roof

Friday, July 20, 2007

I am sorry that various e-mails and blogs that I have written have offended Dr. Roof. I admire and respect Dr. Roof's personal character and professional capabilities. Moreover, I recognize and acknowledge Dr. Roof's hard work and numerous contributions to Howard University's Department of Modern Languages and Literatures. I regret if I caused her pain.

Ian Isidore Smart